UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
PATRICIA CONRADT, as Administratrix of the Estate of
LOUIS WILLIAM CONRADT, JR., deceased,   07-CV-06623

        Plaintiff,   (DC)(GWG)

        –against–

NBC UNIVERSAL, INC.,   RICO Case Statement
        Defendant.
------------------------------------------------------------------X

      As a result of the reasonable inquiry required by Fed.R.Civ.P. 11, plaintiff PATRICIA CONRADT, as Administratrix of the Estate of LOUIS WILLIAM CONRADT, JR., deceased, does rely upon the following facts to initiate the RICO claims set forth in her Verified Complaint:

1.    State whether the alleged unlawful conduct is in violation of 18 U.S.C. §§ 1962(a), (b), (c), and/or (d).

      The conduct is in violation of 18 U.S.C. § 1962(c), which subsection provides, "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

2.    List the defendants and state the alleged misconduct and basis of liability of each defendant.

      A One-Defendant Complaint

      In this Complaint, there is only one defendant: NBC Universal, Inc.

      In *Commercial Cleaning Services, L.L.C. v. Colin Service Systems, Inc.*, 271 F.3d 374 (2nd Cir. 2001), the Second Circuit upheld a one-defendant RICO complaint arising under section 1962(c). So did the Sixth Circuit in *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602 (6th Cir. 2004). So did the Ninth Circuit in *Living Designs, Inc. v. E.I. Dupont de Nemours and Co.*, 431 F.3d 353 (9th Cir. 2005), *cert. den.*, 126 S.Ct. 2861 (2006). So did the Eleventh Circuit in *Williams v. Mohawk Industries, Inc.*, 465 F.3d 1277 (11th Cir. 2006), *cert. den.*, 127 S.Ct. 1381 (2007).

      In *All World Professional Travel Services, Inc. v. American Airlines, Inc.*, 282 F.Supp.2d 1161 (C.D.Cal. 2003), the district court upheld a one-defendant RICO complaint arising under section 1962(c). So too in *Chen v. Mayflower Transit, Inc.*, 315 F.Supp.2d 886 (N.D.Ill. 2004). In *First Federal Sav. and Loan Ass'n of Pittsburgh v. Oppenheim, Appel, Dixon & Co.*, 629 F.Supp. 427 (S.D.N.Y. 1986), Judge Lasker

upheld such a complaint.

<u>Vicarious Liability</u>

A corporation may be held "vicariously liable" under section 1962(c) for the intentional acts of the named participants. *Amendolare v. Schenkers Intern. Forwarders, Inc.*, 747 F.Supp. 162, 168 (E.D.N.Y. 1990) (RICO claims arising out of officer's predicate acts of bribery).

In order to establish this vicarious liability, Conradt plans to show that "an officer or director had knowledge of, or was recklessly indifferent toward, the unlawful activity." *Gruber v. Prudential-Bache Securities, Inc.*, 679 F.Supp. 165, 181 (D.Conn. 1987). See also *USA Certified Merchants, LLC v. Koebel*, 262 F.Supp.2d 319, 328, *recons. den.*, 273 F.Supp.2d 501 (S.D.N.Y. 2003).

Conradt has duly alleged that "each and every act performed by an employee, associate, agent or representative of the defendant was performed on behalf of the defendant and within the scope of authority, and the knowledge and actions of each and every said employee, associate, agent or representative are fully imputable to the defendant." (Complaint ¶ 6.) In particular, "the staff of Dateline has had a common communication network for sharing information on a regular basis. At times and places well known to them, Hansen, Keller, Maraynes, Corvo and Bloom have held meetings and sessions where important discussions took place, and have engaged in common training and instruction. They have done so with the full knowledge, acquiescence and encouragement of the defendant, for its benefit and on its behalf." (Complaint ¶ 38.)

Other factors include "the number of high-level employees involved in the racketeering activity, their degree of participation in the racketeering activity, whether these high-level employees themselves committed the alleged predicate acts, and whether the corporation directly and substantially benefitted [sic] from the racketeering activity." *Gruber*, 679 F.Supp. at 165. Conradt duly plans to amass discovery that the named employees are 'high-level', that they themselves have committed the predicate acts and that the profit to the defendant has been ample and immediate.

3.  List alleged wrongdoers, other than the defendants listed above, and state the alleged misconduct of each wrongdoer.

    Under 18 § 1961(1)(A), any act or threat involving bribery "which is chargeable under State law and punishable by imprisonment for more than one year" is a racketeering activity. Subject to the precise wording of the state statute, the "receipt of an unauthorized compensation in exchange for favorable action by a person in a position of public service constitutes an act involving bribery." *U.S. v. Kotvas*, 941 F.2d 1141, 1146 (11th Cir. 1991), *reh. den.*, 966 F.2d 1463 (1992), *cert. den.*, 506 U.S. 1055 (1993).

    <u>Bribe Takers</u>

2

Per section 5(a) *infra*, various governmental officers accepted bribes to facilitate one or another of the defendant's sting shows.

Bribe Givers

In the Complaint, various persons are named as bearing direct responsibility for the bribe-giving: host Chris Hansen, producer Lynn Keller, senior producer Allan Maraynes, executive producer David Corvo and attorney Craig Bloom and also the members of 'Perverted-Justice'. (Complaint ¶¶ 7 and 37.)

4. List the alleged victims and state how each victim was allegedly injured.

The victim is the late Louis William ("Bill") Conradt, Jr. Bill was the brother of the plaintiff, Patricia Conradt, who is the Administratrix of his estate. On November 5, 2006, in Terrell, Texas, Bill took his life. (Complaint ¶ 14.) The stigma of suicide irrevocably has injured his good name and reputation. (Complaint ¶ 21.)

| Allegation | Paragraph |
|---|---|
| On that date, the defendant desired to stage a confrontation of Bill at said home under the color of the local police, who agreed. With neither a search warrant nor an arrest warrant that was even facially proper, the police and other employees, associates, agents and representatives of the defendant (a) traveled to the house, (b) barricaded the street from further traffic, (c) entered the yard, (d) broke through the rear door of the house and (e) entered the house. Both police officers and other members of the party were wearing the cameras of the defendant – very large cameras, on the cutting edge of technology, that normally are worn only by television reporters. | 15 |
| They were met by Bill. He told them "I'm not gonna hurt anyone" and shot himself. Then a police officer said to a Dateline producer, "That'll make good TV." Death was an hour later. | 16 |
| The defendant had engaged the police, who replaced evidence and warrant with cameras, as servants in its show. Under color of the State of Texas, the defendant subjected Bill to the deprivation of his life, liberty and property. The behavior of the defendant was so outrageous as to shock the contemporary conscience. The conduct of the defendant was outrageous, malicious and morally culpable. | 17 |

| | |
|---|---|
| At the time of Bill's death, as its employees, associates, agents and representatives swarmed upon his yard, the defendant was engaged in restraining Bill's ability to fend for himself. The defendant had imposed upon Bill harsh limitations to act on his own behalf. By means inter alia of its employees, associates, agents and representatives who were trespassers and invaders upon his property, the defendant effectively had placed Bill in its custody. The defendant was subjecting Bill to a special relationship akin to the relationship that a prison has with an inmate. This special relationship engendered a duty to protect him inter alia from suicide. The suicide was reasonably foreseeable. | 39 |
| With regard to said duty to protect Bill, the defendant was deliberately indifferent. At this time, the defendant wore the robe of a state official, and Bill wore the shackles of a detainee. Having trespassed and invaded upon Bill's property to broadcast a spectacle to millions, the defendant took no more steps towards protecting him than are received by a gladiator or bull. | 40 |

A private civil RICO claim survives the demise of the plaintiff. *Epstein v. Epstein*, 966 F.Supp. 260, 263 (S.D.N.Y. 1997).

*N.B.* We do not include a wrongful-death cause of action. Under the law of Texas, such an action is "for the exclusive benefit of the surviving spouse, children, and parents". Texas Civil Practice & Remedies Code § 71.004(a).

5. Describe in detail the pattern of racketeering activities or collection of unlawful debts alleged for each RICO claim. The description of the pattern of racketeering shall include the following information:

a. List the alleged predicate acts and the specific statutes that were allegedly violated.

Various governmental officers accepted bribes to facilitate one or another of the defendant's sting shows. As in *Westlake Plastic Co. v. O'Donnell*, 182 F.R.D. 165, (E.D.Pa. 1998), each of the public officers caved in to the defendant "without the consent of his employer ... as a quid pro quo". *Id.* at 170-171.

In *City of New York v. Joseph L. Balkan, Inc.*, 656 F.Supp. 536 (E.D.N.Y. 1987), the Court rejected a contention that the complaint did not give "each defendant notice of the specific roles each played in the charged conduct and does not specify the date of each bribe, the amount, the defendant offering it, or the sewer inspector accepting the bribe." *Id.* at 545.

Down the line, there will be room for inference. "There is of course no direct proof that any of these deposits and payments were bribes paid by Capolino. Nevertheless, as noted above, Cortapasso offered no credible explanation for the money. We infer that it is the proceeds of bribes." *Curiale v. Capolino*, 883 F.Supp. 941, 950 (S.D.N.Y. 1995). Currently, the particulars available to Conradt are as follows:

| | Time | Place | Name | Title | Paragraph |
|---|---|---|---|---|---|
| | Fall 2006 | Murphy, Texas | Sherwood | City Manager | 23, 29 |
| | Feb. 2006 | Riverside Co., Ca. | Bianco | Sheriff's Lieutenant | 30 |
| | Mar. 2006 | Darke Co., Ohio | Burns<br>Grice | Sheriff's Detective<br>Sheriff's Chief Deputy | 31 |
| | Apr. 2006 | Fort Myers, Fl. | Daniels | Police Chief | 32 |
| | Feb. 2006 | Petaluma, Ca. | Fish | Police Lieutenant | 33 |
| | Sep. 2006 | Long Beach, Ca. | DeBrabander | Police Sergeant | 34-35 |
| | Nov. 2006 | Flagler Beach, Fl. | Free | Police Chief | 36 |

In California, every person who "gives or offers as a bribe to any ministerial officer, employee, or appointee of the State of California, county or city therein, or political subdivision thereof, any thing" the theft of which would be grand theft is guilty of a felony. California Penal Code § 67.5.

In Florida, to bribe is "corruptly to give, offer, or promise to any public servant, or, if a public servant, corruptly to request, solicit, accept, or agree to accept for himself or herself or another, any pecuniary or other benefit not authorized by law with an intent or purpose to influence the performance of any act or omission which the person believes to be, or the public servant represents as being, within the official discretion of a public servant, in violation of a public duty, or in performance of a public duty." Florida Statutes 838.015. The wrongdoer is guilty of a "felony of the second degree". *Id.*

In Ohio, no person, "with purpose to corrupt a public servant or party official, or improperly to influence him with respect to the discharge of his duty, whether before or after he is elected, appointed, qualified, employed, summoned, or sworn, shall promise, offer, or give any valuable thing or valuable benefit." Ohio Revised Code § 2921.02. The wrongdoer is guilty of a "felony of the third degree." *Id.*

In Texas, a person commits a felony of the second degree if he "intentionally or knowingly offers, confers, or agrees to confer on another, or solicits, accepts, or agrees to accept from another: (1) any benefit as consideration for the recipient's decision, opinion, recommendation, vote, or other exercise of discretion as a public servant, party official, or voter; [or] (3) any benefit as consideration for a violation of a duty imposed by law on a public servant or party official". Texas Penal Code § 36.02(a) and (e).

> "The evils of bribery are fully manifested by the actor who believes that he is conferring a benefit in exchange for official action, no matter how the recipient views the transaction.... It is wholly appropriate, therefore, to view the action of conferring a benefit or accepting a benefit entirely from the point of view of the actor. If he meant to confer a benefit as consideration for official action or to accept a benefit for that purpose, the offense of bribery is complete." *Martinez v. State*, 696 S.W.2d 930, 933 (Tex.App. 1985).

        Each of these statutes "provides sufficient enforcement standards to satisfy 'the requirement that a legislature establish minimal guidelines to govern law enforcement.'" *U.S. v. Gaudreau*, 860 F.2d 357, 364 (10th Cir. 1988).

b.    Provide the date of each predicate act, the participants in each predicate act, and a description of the facts constituting each predicate act.

        See section 5(a) *supra*.

c.    If the RICO claim is based on the predicate offenses of wire fraud, mail fraud, or fraud in the sale of securities, the "circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Identify the time, place and substance of the alleged misrepresentations, and the identity of persons to whom and by whom alleged misrepresentations were made.

        The basic predicate offense is *bribery* and not mail or wire fraud. On the subject of mail and wire fraud, we state only that the bribery was "accompanied by a pattern of mail and wire fraud, as defined 18 U.S.C. §§ 1341 and 1343." (Complaint ¶ 52.)

        "'[I]t is inappropriate to focus exclusively on the fact that Rule 9(b) requires particularity in pleading fraud.' Rather, a court must strike a 'balance between the simplicity sought in Rule 8 and the particularity required by Rule 9.'" *U.S. v. Gelb*, 783 F.Supp. 748, 757 (E.D.N.Y. 1991) (citations omitted). Conradt "is not required to prove [her] case at the pleading stage." *Ricciuti v. N.Y.C. Transit Authority*, 941 F.2d 119, 124 (2nd Cir. 1991). "[A]t the pleading stage, standing allegations need not be crafted with precise detail, nor must the plaintiff prove [her] allegations of injury." *Baur v. Veneman*, 352 F.3d 625, 631 (2nd Cir. 2003).

        At this early stage, a "rigid application of Rule 9(b) would be particularly inappropriate." *Ivers v. Keene Corp.*, 780 F.Supp. 185, 190 (S.D.N.Y. 1991). Fraud allegations may based on information and belief "as to facts peculiarly within the opposing party's knowledge". *Stern v. Leucadia Nat. Corp.*, 844 F.2d 997, 1003 (2nd Cir.), *cert. den.*, 488 U.S. 852 (1988).

d.    State whether there has been a criminal conviction for violation of any predicate act.

        No.

e.    State whether civil litigation has resulted in a judgment with regard to any predicate

        No.

f.    Describe how the predicate acts form a pattern of racketeering activity.

        The predicate acts of bribery form a pattern of racketeering activity much as they did

in *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229 (1989).

> Under the analysis we have set forth above, and consistent with the allegations in their complaint, petitioners may be able to prove that the multiple predicates alleged constitute "a pattern of racketeering activity," in that they satisfy the requirements of relationship and continuity. The acts of bribery alleged are said to be related by a common purpose, to influence commissioners in carrying out their duties in order to win approval of unfairly and unreasonably high rates for Northwestern Bell. Furthermore, petitioners claim that the racketeering predicates occurred with some frequency over at least a 6-year period, which may be sufficient to satisfy the continuity requirement. Alternatively, a threat of continuity of racketeering activity might be established at trial by showing that the alleged bribes were a regular way of conducting Northwestern Bell's ongoing business, or a regular way of conducting or participating in the conduct of the alleged and ongoing RICO enterprise, the MPUC.

*Id.* at 250. In the instant case, the multiple predicates constitute a pattern of activity, in that they satisfy the requirements of *relationship* and *continuity*. The acts of bribery are related by a common purpose, to influence governmental officials in carrying out their duties in order to boost the profits of the defendant. The predicates have occurred with some frequency and have been a regular way of conducting the business of the defendant.

In *Town of Kearny v. Hudson Meadows Urban Renewal Corp.*, 829 F.2d 1263 (3rd Cir. 1987), the defendants protested that the victims of the bribery had varied. *Mutatis mutandis*, one was a fledgling in Flagler, and the other a recidivist in Riverside. The Court rejected this contention. "The separate bribes had the same or similar purposes." *Id.* at 1268.

g. State whether the alleged predicate acts relate to each other as part of a common plan. If so, describe the alleged relationship and common plan in detail.

'Common plan' is a term reserved for cases of multiple defendants destined for a joint trial. See, *e.g.*, *United States v. Cardascia*, 951 F.2d 474, 482 (2nd Cir.1991). Be that as it may, we do allege a common *purpose* shared by the defendant's employees Hansen, Keller, Maraynes, Corvo and Bloom.

"In or about the winter of 2005-2006, at a time best known to them, these persons came to share a common purpose. This purpose was to loosen the inhibitions of, and oaths taken by, law enforcement and other governmental officials with regard to Predator sting shows by means of bribery. At that time, [these persons] agreed amongst themselves and with their superiors at the defendant that the Dateline group would work to achieve this purpose. At all relevant times, the defendant well knew of, endorsed and funded both this agreement and the activities committed in furtherance thereof." (Complaint ¶ 37.)

7

As in *Dooley v. United Technologies Corp.*, 152 F.R.D. 419, 423 (D.D.C. 1993), the producers of Predator and their higher-ups "knowingly assented to and furthered the bribery scheme." The Dateline group actively participated in "setting up the alleged mechanism for the bribes as well as transferring the unlawful funds." *Id.*

All that is needed for commission of a predicate act is "participation in that criminal act, and that participation need not be direct". *Johnson Controls, Inc. v. Exide Corp.*, 132 F.Supp.2d 654, 659 (N.D.Ill. 2001). So long as the producers of Predator "authorized or requested" the bribes to be made, the defendant has committed a predicate act. *Id.*

6. Describe in detail the alleged "enterprise" for each RICO claim. A description of the enterprise shall include the following: (a) state the name of the individuals, partnerships, corporations, associations, or other legal entities, which allegedly constitute the enterprise; (b) a description of the structure, purpose, function and course of conduct of the enterprise; (c) a statement of whether any defendants are employees, officers or directors of the alleged enterprise; (d) a statement of whether any defendants are associated with the alleged enterprise; (e) a statement of whether plaintiff is alleging that the defendants are individuals or entities separate from the alleged enterprise or that the defendants are the enterprise itself, or members of the enterprise; (f) if any defendants are alleged to be the enterprise itself, or members of the enterprise, an explanation of whether such defendants are perpetrators, passive instruments, or victims of the alleged racketeering activity.

   On information and belief, the defendant is a massive media and entertainment company in the development, production and marketing of entertainment, news and information. The defendant owns and operates a motion picture company and many television stations, news and entertainment networks, television-production operations and theme parks.

   In or about the fall of 2004, the defendant initiated a show presently known as "To Catch a Predator". In this show, the defendant presides over a purported sting operation. The mainstay of the show is public humiliation of individuals lured to a so-called 'sting house' by e-mail correspondence with decoys that have posed as minors. Often, they are greeted at the house by other decoys. Sometimes without clothing, the individual soon meets the host, who announces, "I'm Chris Hansen with Dateline NBC." (Complaint ¶ 10.)

   We do not allege that the defendant is separate or distinct from any of its various divisions, operations or enterprises or that there has been a conspiracy between the defendant and one or more of them. We do not allege that these divisions, operations and enterprises make for a multiplicity of actors – any more than do the tentacles of an octopus that swims in murky waters.

   Merely for clarity, we do allege that one part rises to the top: namely, the 'Catch a

Predator' finger of the 'Dateline' hand of the television-production arm of the defendant. (Complaint ¶ 51.)

7. State and describe in detail whether plaintiff is alleging that the pattern of racketeering activity and the enterprise are separate or have merged into one entity.

   It is axiomatic that the 'enterprise' is not the 'pattern of racketeering activity'. The enterprise is an entity "separate and apart" from the pattern of activity in which the enterprise engages. *U.S. v. Turkette*, 452 U.S. 576, 577 (1981). Conradt duly alleges that enterprise and patterns are separate.

   Per section 6 *supra*, the enterprise is the 'Catch a Predator' finger of the 'Dateline' hand of the television-production arm of the defendant. (Complaint ¶ 51.)

   Per section 5(f) *supra*, the multiple predicates constitute a pattern of activity, in that they satisfy the requirements of *relationship* and *continuity*. The acts of bribery are related by a common purpose, to influence governmental officials in carrying out their duties in order to boost the profits of the defendant. The predicates have occurred with some frequency and have been a regular way of conducting the business of the defendant.

   Relationship

   The "predicate state law bribery crimes were related as they had the same purpose". *U.S. v. Freeman*, 6 F.3d 586, 596 (9th Cir. 1993), *cert. den.*, 511 U.S. 1077, *cert. den.*, 511 U.S. 1147 (1994). The crimes also "shared similar results, participants, and methods of commission." *Id.*

   Continuity

   As in *FAC, Inc. v. Cooperative de Seguros de Vida*, 106 F.Supp.2d 244 (D.Puerto Rico 2000), this is not a case of "an isolated bribe, or a bribe with a definite end-point, so as to negate any threat of ongoing unlawful business activity." *Id.* at 260.

8. Describe the alleged relationship between the activities of the enterprise and the pattern of racketeering activity. Discuss how the racketeering activity differs from the usual daily activities of the enterprise, if at all.

   A traveler from the torso of the defendant to the finger called 'Predator' seemingly would find that daily activities lessen in legitimacy.

9. Describe what benefits, if any, the alleged enterprise receives from the alleged pattern of racketeering.

   Monetary profits.

10. Describe the effect of the activities of the enterprise on interstate or foreign commerce.

9

On information and belief, the bribe-induced sting shows have been broadcast both nationally and across the globe. In determining what connections with interstate commerce must be proven to establish a violation of section 1962, "the courts have ruled that the impact need not be great. So long as the activities of the enterprise affect interstate commerce, the jurisdictional element is satisfied." *U.S. v. Barton*, 647 F.2d 224, 233 (2nd Cir.), *cert. den.*, 454 U.S. 857 (1981). The law does not require Conradt to "show more than a minimal effect". *DeFalco v. Bernas*, 244 F.3d 286, 309 (2nd Cir.), *cert. den.*, 534 U.S. 891 (2001).

11. If the complaint alleges a violation of 18 U.S.C. § 1962(a), provide the following: (a) state who received the income derived from the pattern of racketeering activity or through the collection of unlawful debt; and (b) describe the use or investment of such income.

    Not applicable.

12. If the complaint alleges a violation of 18 U.S.C. § 1962(b), describe in detail the acquisition or maintenance of any interest in or control of the alleged enterprise.

    Not applicable.

13. If the complaint alleges a violation of 18 U.S.C. § 1962(c), provide the following: (a) state who is employed by or associated with the alleged enterprise, and (b) state whether the same entity is both the liable "person" and the "enterprise" under section 1962(c).

    Admittedly, Conradt must allege "the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). Accordingly, Conradt names employees and other natural persons who are distinct and separate from the defendant itself, a "legally different entity with different rights and responsibilities due to its different legal status." *Id.* at 163. It suffices that we name "lower rung participants ... who are under the direction of upper management." *Reves v. Ernst & Young*, 507 U.S. 170, 184 (1993).

    Specifically, a number of people are employed by or associated with 'To Catch a Predator'. These include host Chris Hansen, producer Lynn Keller, senior producer Allan Maraynes, executive producer David Corvo and attorney Craig Bloom, various named city officials and law-enforcement officers and also the members of an organization known as 'Perverted-Justice'. (Complaint ¶¶ 7 and 37.)

    Under subsection (c), it is unlawful for any person employed by or associated with 'To Catch a Predator' to participate in the conduct of the affairs of 'To Catch a Predator' through a pattern of racketeering activity. The aforesaid individuals participate in the conduct of the affairs of 'To Catch a Predator' and thus the affairs of the defendant. They do so through a pattern of bribery.

10

14.  If the complaint alleges a violation of 18 U.S.C. § 1962(d), describe in detail the facts showing the existence of the alleged conspiracy.

   Not applicable.

15.  Describe the alleged injury to business or property.

   Injury to good name and reputation. (Complaint ¶¶ 21 and 53).

16.  Describe the direct causal relationship between the alleged injury and the violation of the RICO statute.

   But for the bribery of Sherwood, who was the city manager of Murphy, Texas, no sting would have occurred there. But for the sting in Murphy, the defendant would not have succeeded in steamrolling the police in Terrell. But for the steamrolling, the police would not have broken into Bill's home – with cameramen and without a warrant. But for this invasion, upon an individual whose mental health was doubted, Bill would not have shot himself. But for this demise, Bill would enjoy a good name and reputation for his many good deeds and kind words in Kaufman County. Bill would not have suffered from a name and reputation (a) for suicide and (b) for acts of which only the defendant has charged and convicted him.

   In *In re American Honda Motor Co., Inc. Dealerships Relations Litigation*, 941 F.Supp. 528 (D.Md. 1996), the Court rejected the defendants' position "that the RICO claims are fundamentally flawed because each relies on a hypothetical 'what should have happened' point of comparison as the basis for the various injuries allegedly caused by the bribery scheme." *Id.* at 537.

   "While the City must eventually establish that the alleged predicate acts of bribery were a 'substantial factor in the sequence of responsible causation, and [that] the injury is reasonably foreseeable or anticipated as a natural consequence,' this is an issue of fact which cannot be determined on a motion to dismiss the complaint for failure to state a claim." *City of New York v. JAM Consultants, Inc.*, 889 F.Supp. 103 (S.D.N.Y. 1995) (citation omitted).

   It is settled law that a "person in state custody has a right under the Due Process Clause to some level of care and protection, including protection against suicide." *Hanrahan v. City of Norwich*, 959 F.Supp. 118, 122 (D.Conn.), *aff'd*, 133 F.3d 907 (2nd Cir. 1997). Bill was in custody of the state. The defendant played puppeteer and must now pay the piper.

   The defendant makes millions crying, "See the freaks!" It trolls the nation for people with emotional issues and, upon confrontation, is deliberately indifferent to their needs. Pedophilia becomes a joke, and voyeurism becomes the norm; suicide makes "good TV."

The "official custodian of a pretrial detainee may be found liable for violating the detainee's due process rights if the official denied treatment needed to remedy a serious medical condition and did so because of his deliberate indifference to that need." *Weyant v. Okst*, 101 F.3d 845, 856 (2nd Cir. 1996). Similarly, one who loads a police officer with his cameras in order to "make good TV" may be found to have a breached a duty to protect from suicide the gladiator, bull or other target.

17. List the damages sustained by reason of the violation of 18 U.S.C. § 1962, indicating the amount for which each defendant is allegedly liable.

There is only one defendant. From the earliest days, Bill had chosen a good name "rather than great riches: it was the jewel of his soul." (Complaint ¶ 21.) "Pursuant to 18 U.S.C. § 1964(c), his estate is entitled to recover from the defendant treble the actual damages, estimated to be in an amount not less than thirty-five million dollars ($35,000,000.00), in addition to costs of suit and reasonable attorney fees." (Complaint ¶ 53.)

"Where the tort itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts. In such case, while the damages may not be determined by mere speculation or guess, it will be enough if the evidence show the extent of the damages as a matter of just and reasonable inference, although the result be only approximate. The wrongdoer is not entitled to complain that they cannot be measured with the exactness and precision that would be possible if the case, which he alone is responsible for making, were otherwise." *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563 (1931).

In *Bieter Co. v. Blomquist*, 987 F.2d 1319 (8th Cir. 1993), *cert. den.*, 510 U.S. 823 (1993), the Court upheld that a bribe victim had suffered RICO injuries. Said the Court, "We do not question that the precise degree of Bieter's injury is somewhat speculative, but it is simply the periphery, and not the core, which we so describe. Bieter was injured." *Id.* at 1329.

18. List all other federal causes of action, if any, and provide the relevant statute numbers.

Deprivation of life, liberty and property by the defendant under color of the State of Texas without due process of law. 42 U.S.C. § 1983. (Complaint ¶¶ 45-49.)

*Regrettably, the Complaint contains two paragraphs that are numbered '49'. Moreover, paragraph '48' may be construed to suggest that there is more than one defendant. Conradt apologizes for this and respectfully requests that paragraph '48' be deemed stricken and that the first paragraph '49' henceforth be called '48'. Thus, the allegations under 42 U.S.C. § 1983 would be stated at paragraphs 45 through 48.*

19. List all pendent state claims, if any.

       Intentional infliction of emotional distress. (Complaint ¶¶ 41-44.)

20. Provide any additional information that you feel would be helpful to the court in processing your RICO claims.

"Section 904(a) of RICO, 84 Stat. 947, directs that '[t]he provisions of this Title shall be liberally construed to effectuate its remedial purposes.'" *U.S. v. Turkette, supra*, 452 U.S. at 587.

| Dated: Brooklyn, New York<br>August 1, 2007 | Yours, etc.<br><br>BARON ASSOCIATES P.C.<br><br>*[signature]*<br><br>By: Bruce Baron, Esq. (BB7297)<br>Attorneys for the Plaintiff<br>2509 Avenue U<br>Brooklyn, New York 11229<br>(718) 934-6501 |
|---|---|