UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PATRICIA CONRADT, as Administratrix
of the Estate of LOUIS WILLIAM CONRADT,
JR., deceased,

                        Plaintiff,

         -against-

NBC UNIVERSAL, INC.,

                        Defendant.

Case No. 6623/2007 (DC)
 ECF Case

## MEMORANDUM OF LAW
## IN SUPPORT OF THE MOTION
## OF NBC UNIVERSAL TO DISMISS

Hilary Lane (HL-0829)
Susan Weiner (SW-3531)
NBC Universal, Inc.
30 Rockefeller Plaza
New York, New York 10112
212-664-4444
212-664-6572 (fax)

Lee Levine (*pro hac vice* motion pending)
Amanda M. Leith (*pro hac vice* motion pending)
LEVINE SULLIVAN
 KOCH & SCHULZ, L.L.P.
321 West 44th Street, Suite 510
New York, NY  10036
212-850-6100
212-850-6299 (fax)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT .........................................................................................1

STATEMENT OF FACTS ................................................................................................1

ARGUMENT ....................................................................................................................3

I.      Plaintiff Has Failed to State a RICO Claim on Behalf of the Estate ...................................4

        a.      The RICO Claim Should Be Dismissed Because There is No Allegation that Mr. Conradt Was Injured "In His Business or Property" ...................................................................................................4

        b.      Plaintiff has Failed to Allege a Separate and Distinct Enterprise ...........................6

II.     Plaintiff Fails to State a Claim for Violation of Section 1983 on Behalf of the Estate ...................................................................................................................7

        a.      NBC Did Not Owe Mr. Conradt a Duty to Protect Him from Suicide ....................................................................................................8

        b.      The Police Did not violate Mr. Conradt's Fourth Amendment Rights ..................................................................................................10

III.    Plaintiff Fails to State a Claim for Intentional Infliction of Emotional Distress on Behalf of the Estate ....................................................................................12

IV.    Plaintiff Fails to State a Claim for Negligence on Behalf of the Estate ..........................17

V.     Plaintiff Fails to State a Claim for Unjust Enrichment on Behalf of the Estate ..................................................................................................................20

VI.    Plaintiff Fails to State a Claim on Her Own Behalf ..........................................................21

        a.      Plaintiff Lacks Standing to Assert claims in Her Own Name ..............................21

        b.      Plaintiff Fails to State a Claim for Invasion of Privacy in Her Own Name ..................................................................................................23

CONCLUSION.................................................................................................................25

# TABLE OF AUTHORITIES

## CASES

*Andrade v. Chojnacki*, 65 F. Supp. 2d 431 (W.D. Tex. 1999)........................................................13

*A.H. Belo Corp. v. Corcoran*, 52 S.W.3d 375 (Tex. App. 2001)....................................................17

*Almond v. Tarver*, 468 F. Supp. 2d 886 (E.D. Tex. 2006)............................................................12

*Bankers Trust Co. v. Rhoades*, 741 F.2d 511 (2d Cir. 1984), *vacated on other grounds*,
    473 U.S. 922 (1985)....................................................................................................................4

*Baugh v. CBS, Inc.*, 828 F. Supp. 745 (N.D. Cal. 1993)..............................................................25

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ..............................................................3

*Bennett v. United States Trust Co. of New York*, 770 F.2d 308 (2d Cir. 1985) ............................6

*Best Buy Co. v. Barrera*, 214 S.W.3d 66 (Tex. App. 2006) ........................................................20

*Bird v. W.C.W.*, 868 S.W.2d 767 (Tex. 1994) ...........................................................................18

*Bittakis v. City of El Paso*, 480 F. Supp. 2d 895 (W.D. Tex. 2007) ..........................................14

*Brock v. Wright*, 315 F.3d 158 (2d Cir. 2003) ..........................................................................10

*Burlington Northern Railroad Co. v. Southwest Electric Power Co.*, 925 S.W.2d 92 (Tex.
    App. 1996), *aff'd*, 966 S.W.2d 467 (Tex. 1998)....................................................................20

*Camarano v. City of New York*, 624 F. Supp. 1144 (S.D.N.Y. 1986) ........................................10

*Campbell v. City of San Antonio*, 43 F.3d 973 (5th Cir. 1995)..................................................18

*Channel 4, KGBT v. Briggs*, 759 S.W.2d 939 (Tex. 1988) ....................................................15, 16

*Clayton v. Richards*, 47 S.W.3d 149 (Tex. App. 2001)..............................................................24

*Commer v. Keller*, 64 F. Supp. 2d 266 (S.D.N.Y. 1999)..............................................................4

*Conley v. Gibson*, 355 U.S. 41 (1957) ........................................................................................3

*Cornhill Insurance PLC v. Valsamis, Inc.*, 106 F.3d 80 (5th Cir. 1997)......................................24

*Cox Broacasting Corp. v. Cohn*, 420 U.S. 469 (1975) ................................................................24

*Cox Texas Newspapers, L.P. v. Wootten*, 59 S.W.3d 717 (Tex. App. 2001)..................................16

*Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814 (Tex. 2005) .....................................................12, 16

*Doe v. Mobile Video Tapes, Inc.*, 43 S.W.3d 40 (Tex. App. 2001)................................................23

*Evans v. Dolcefino*, 986 S.W.2d 69, 79 (Tex. App. 1999) ...........................................................16

*First Union National Bank v. Richmont Capital Partners*, 168 S.W.3d 917 (Tex. App. 2005) ...................................................................................................................................20

*Gonzales v. City of Corpus Christi,* No. C.A. C-05-280, 2006 WL 1406852 (S.D. Tex. May 19, 2006), *aff'd on other grounds* 22 F. App'x 342 (5th Cir. 2007) .........................18, 19

*Gonzales v. Times Herald Printing Co.*, 513 S.W.2d 124 (Tex. App. 1974) ...............................22

*Gotlin v. Lederman*, 367 F. Supp. 349 (E.D.N.Y. 2005) ..............................................................5

*Hanrahan v. City of Norwich*, 959 F. Supp. 118 (D. Conn.), *aff'd*, 133 F.3d 907 (2d Cir. 1997) .........................................................................................................................8, 9

*Hoffmann-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438 (Tex. 2004)............................12, 16, 17

*Hollander v. Flash Dancers Topless Club*, 340 F. Supp. 2d 453 (S.D.N.Y. 2004), *aff'd*, 173 F. App'x 15 (2d Cir. 2006) ..........................................................................................5

*Houston Printing Co. v. Dement*, 44 S.W. 558 (Tex. App. 1898) ...............................................5, 6

*Hustler Magazine v. Falwell*, 485 U.S. 46 (1988) ......................................................................15

*Jones v. Maynard*, No. 01-95-00908-CV, 1999 WL 191162 (Tex. App. Apr. 8, 1999) ...............8

*Justice v. Belo Broadcasting Corp.*, 472 F. Supp. 145 (N.D. Tex. 1979) ..............................22, 23

*Klein & Associates Political Relations v. Port Arthur Independent School District*, 92 S.W.3d 889 (Tex. App. 2002).......................................................................................14

*Kroger Texas Ltd. Partnership v. Suberu*, 216 S.W.3d 788 (Tex. 2006) .....................................14

*LaChance v. Hollenbeck*, 695 S.W.2d 618 (Tex. App. 1985) ......................................................20

*Lowe v. Hearst Communications, Inc.*, 414 F. Supp. 2d 669 (W.D. Tex. 2006), *aff'd*, 487 F.3d 246 (5th Cir. 2007) ........................................................................................13

*Lowe v. Hearst Communications, Inc.*, 487 F.3d 246 (5th Cir. 2007)...........................................24

*Mackenzie v. Donovan*, 375 F. Supp. 2d 312 (S.D.N.Y. 2005) ...................................................4

*McCullough v. Godwin*, 214 S.W.3d 793 (Tex. App. 2007) ........................................................19

*Mineer v. Williams*, 82 F. Supp. 2d 702 (E.D. Ky. 2000).........................................................23

*Moore v. Charles B. Pierce Film Enterprises, Inc.*, 589 S.W.2d 489 (Tex. App. 1979).........22, 23

*Moser v. Roberts*, 185 S.W.3d 912 (Tex. App. 2006) ..................................................14

*Mroz v. City of Tonawanda*, 999 F. Supp. 436 (W.D.N.Y. 1998) ...............................................8, 9

*New York Times v. Sullivan*, 376 U.S. 254 (1964) ......................................................15

*Payton v. New York*, 445 U.S. 573 (1980) ...................................................................11

*Perez v. Lopez*, 74 S.W.3d 60 (Tex. App. 2002) ...........................................................19

*Provencio v. Paradigm Media, Inc.*, 44 S.W.3d 677 (Tex. App. 2001) ........................................16

*R.C.M. Executive Gallery Corp. v. Rols Capital Co.*, 901 F. Supp. 630 (S.D.N.Y. 1995).............7

*Reeves v. Fox Television Network*, 983 F. Supp. 703 (N.D. Ohio 1997).....................................17

*Renfro Drug v. Lawson*, 160 S.W.2d 246 (Tex. App. 1942) .......................................................22

*Reyes v. City University of New York*, No. 06 Civ. 3639, 2007 WL 2186961 (S.D.N.Y. July 26, 2007)...................................................................................................3

*Richter v. Sudman*, 634 F. Supp. 234 (S.D.N.Y. 1986) ....................................................6

*Ritzmann v. Weekly World News, Inc.*, 614 F. Supp. 1336 (N.D. Tex. 1985) .........................21, 22

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339 (2d Cir. 1994) ..........6

*Rogers v. Dallas Morning News, Inc.*, 889 S.W.2d 467 (Tex. App. 1994) ...................................16

*San Antonio Credit Union v. O'Connor*, 115 S.W.3d 82 (Tex. App. 2003)..................................17

*Shaw v. Rolex Watch U.S.A., Inc.*, 776 F. Supp. 128 (S.D.N.Y. 1991) .......................................5, 7

*Shell Oil Co. v. Humphrey*, 880 S.W.2d 170 (Tex. App. 1994) .....................................................8

*Smith v. Sneed*, 938 S.W.2d 181 (Tex. App. 1997) ............................................... 17-19

*Snider v. Dylag*, 188 F.3d 51 (2d Cir. 1999)..................................................................7

*Sound Video Unlimited, Inc. v. Video Shack, Inc.*, 700 F. Supp. 127 (S.D.N.Y. 1988) ..................6

*Speer v. United States*, 512 F. Supp. 670 (N.D. Tex. 1981), *aff'd*, 675 F.2d 100 (5th Cir. 1982) ........................................................................................................................19

*Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62 (Tex. 1998)....................................12

*Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471 (Tex. 1995)............................................................25

*Taylor v. Wilson*, 180 S.W.3d 627 (Tex. App. 2005) ....................................................................5

*Texas Beef Group v. Winfrey*, 11 F. Supp. 2d 858 (N.D. Tex. 1998), *aff'd*, 201 F.3d 680 (5th Cir. 2000)........................................................................................................18

*United States v. Lovelock*, 170 F.3d 339 (2d Cir. 1999)..............................................................11

*United States v. Waker*, 463 F. Supp. 2d 348 (W.D.N.Y. 2006) ..................................................11

*United States v. White*, 356 F.3d 865 (8th Cir. 2004)..................................................................11

*Vaughn v. Drennon*, 202 S.W.3d 308 (Tex. App. 2006) .........................................................23, 24

*Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502 (Tex. 2002)................................................19

## STATUTES

18 U.S.C. § 1962(c) ......................................................................................................................6

18 U.S.C. § 1964(c) ....................................................................................................................2, 4

42 U.S.C. § 1983 (Civil Rights Act)..........................................................................................2, 7-9

Fed. R. Civ. P. 12 (b)(6).................................................................................................................1

Tex. Civ. Prac. & Rem. Code § 71.004 (2007) ............................................................................13

Tex. Civ. Prac. & Rem. Code § 73.001 (2007) .............................................................................5

Tex. Penal Code § 33.021(c) & (d)...........................................................................................2, 3

## PRELIMINARY STATEMENT

This case arises from the suicide of Louis William Conradt, Jr., a public official in Rockwell County, Texas, who tragically took his own life when police sought to arrest him for the crime of soliciting sex from a minor. His sister, in her capacity as Administratrix of his estate, blames NBC Universal, Inc. ("NBC") for her brother's death claiming that the television network instigated Texas authorities to investigate and arrest him, even though she does not contend that Mr. Conradt was innocent of the crime for which he was to be arrested. Faced with the reality that Texas law does not permit a claim for wrongful death under these circumstances, Plaintiff's lawyers have chosen instead to commence this litigation claiming that NBC's alleged conduct violates federal law and asserting a host of other state law claims.

Plaintiff's Amended Complaint purports to assert nine distinct causes of action arising under federal and state law. Of necessity, we address each of them separately and demonstrate that Plaintiff does not and cannot state a claim under either of the cited federal statutes or the tag-along tort theories under Texas law. The legal deficiency of each cause of action on its face confirms the overarching conclusion that, despite Ms. Conradt's understandable grief at the loss of her brother and her perception of the reputational consequences of his suicide, the law simply does not entitle her to recover damages against NBC.

## STATEMENT OF FACTS

NBC produces and broadcasts an investigative news series called "To Catch a Predator" on its news program Dateline NBC ("Dateline"). Verified Amended Complaint ("Compl.") ¶ 14.[1] "To Catch a Predator" reports on the efforts of law enforcement authorities and a group

---

[1] A copy of the Amended Complaint is attached to the Declaration of Hilary Lane ("Lane Dec.") as Exhibit A. As required by Fed. R. Civ. P. 12 (b)(6), NBC accepts the allegations in the Amended Complaint as true solely for purposes of this motion. NBC otherwise disputes most of those allegations.

called Perverted Justice to identify and arrest sexual predators. *Id.* Decoys posing as teenagers engage in online exchanges, and sometimes telephone conversations, with alleged predators. *Id.* The decoys "invite" predators who express interest in meeting them to a house which has been specifically secured for purposes of this operation. The predators are met at the house by Dateline correspondent Chris Hansen and are then arrested by the local police. *Id.* Over the past three years, Dateline has reported on these efforts to combat sexual predators in various localities across the country. *See generally id.* ¶¶ 14, 52-59. In November 2006, Dateline covered such an operation conducted in Murphy, Texas. *Id.* ¶¶ 18-25.

William Conradt was a former District Attorney who was, at all relevant times, a prosecutor in Rockwell County, Texas. *Id.* ¶27. During the Murphy operation, Mr. Conradt communicated with a decoy online and on the telephone but did not come to the house. *Id.* ¶ 28. Police officers thereafter obtained arrest and search warrants and proceeded to his house to execute them. *Id.* ¶¶ 29-38. When Mr. Conradt did not respond to the police, they entered his house to arrest him for soliciting a minor. *Id.* ¶ 38.[2] As officers encountered him there, he committed suicide. *Id.* ¶ 41.

Patricia Conradt, Mr. Conradt's sister, brought this action against NBC on behalf of herself and his estate (the "Estate"). *Id.* ¶¶ 3, 48, 50. Plaintiff asserts claims on behalf of the Estate for violation of 18 U.S.C. § 1964(c) (RICO) and 42 U.S.C. § 1983 (Civil Rights Act) and for intentional infliction of emotional distress, negligence and unjust enrichment, and on her own behalf for intrusion, disclosure of private facts, intentional infliction of emotional distress and negligence.

---

[2]     Under Texas law, it is a felony to solicit a minor over the Internet. *See* Tex. Penal Code § 33.021(c). The solicitation itself is the crime; no actual meeting need occur. The statute specifically provides that it is not a defense that no meeting took place, that the actor did not intend for a meeting to

## ARGUMENT

A court should grant a motion to dismiss under Rule 12(b)(6) if, taking all the complaint's well-pleaded allegations as true, the court concludes that the plaintiff has failed to state a claim that would entitle it to relief. *See Reyes v. City Univ. of New York,* No. 06 Civ. 3639, 2007 WL 2186961, at *4 (S.D.N.Y. July 26, 2007). The Supreme Court recently restated the applicable standard in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In the wake of *Twombly*, a plaintiff must put forth sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level" in order to survive a motion to dismiss. *Id.* at 1965. To meet this obligation, a plaintiff must offer "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.  See Reyes,* 2007 WL 2186961, at *4. *Twombly* specifically retires the standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) – that a complaint should not be dismissed unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 127 S. Ct. at 1969. Instead, *Twombly* emphasizes that a complaint's "basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* at 1966 (internal citations omitted).

The Amended Complaint does not contain factual allegations sufficient to support the claims it purports to state. While asserting multiple conclusions, Plaintiff does not and cannot allege facts to establish the requisite elements of any of the causes of action she asserts. As a result, the Amended Complaint must be dismissed.

---

occur or that "the actor was engaged in a fantasy at the time of commission of the offense." *Id.* § 33.021(d).

**I.      Plaintiff Has Failed to State a RICO Claim on Behalf of the Estate**

To state a RICO claim, Plaintiff must allege facts establishing, among other things, (i) that Mr. Conradt was "injured in his business or property by reason of a violation of section 1962" and (ii) that the alleged "enterprise" is separate and distinct from the person who allegedly conducted the affairs of the enterprise. 18 U.S.C. § 1964(c).  The Amended Complaint does not satisfy either requirement.

> *a.      The RICO Claim Should Be Dismissed Because There is No Allegation that Mr. Conradt Was Injured "In His Business or Property"*

To carry its burden of showing that Mr. Conradt was injured in his business or property, the Estate must show "a proprietary type of damage."  *Bankers Trust Co. v. Rhoades*, 741 F.2d 511, 515 (2d Cir. 1984), *vacated on other grounds*, 473 U.S. 922 (1985).  Although the Amended Complaint contains the bare assertion that Mr. Conradt was "injured in his property," Plaintiff does not, and cannot, allege any facts that would establish this required element.  This Court is not required to - and indeed may not - accept this "formulaic recitation of the elements." *Twombly,* 127 S.Ct. at 1965; *see also Mackenzie v. Donovan*, 375 F. Supp. 2d 312, 318 (S.D.N.Y. 2005) ("Generally, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."); *Commer v. Keller*, 64 F. Supp. 2d 266, 269 (S.D.N.Y. 1999) ("Court is not required to uphold the validity of a claim supported only by conclusory allegations").

The allegations of the Amended Complaint make clear that the *only* alleged injury is to Mr. Conradt's name and reputation:

> On information and belief, from the earliest days, BILL had chosen a good name rather than great riches: it was the jewel of his soul.  The stigma of suicide irrevocably has spread its dark shadow over this good name – so as to blacken what otherwise would have been valuable property of his estate: how BILL is remembered – his 'memory.'

Compl. ¶ 47; *see also id.* ¶¶ 5, 82.  This type of personal injury is not actionable under RICO.  *See, e.g., Gotlin v. Lederman*, 367 F. Supp. 2d 349, 356-57 (E.D.N.Y. 2005) (dismissing RICO claim based on personal injury because plaintiffs failed to allege injury to their business or property); *Hollander  v. Flash Dancers Topless Club*, 340 F. Supp. 2d 453, 458-59 (S.D.N.Y. 2004) (dismissing RICO claim based on injury to business reputation and good will), *aff'd*, 173 F. App'x 15 (2d Cir. 2006); *Shaw v. Rolex Watch U.S.A., Inc.*, 776 F. Supp. 128, 134-35 (S.D.N.Y. 1991) (dismissing RICO claims to the extent they were based on emotional distress or physical injury).

In *Hollander,* for example, the claimed injuries included damages to the plaintiff's "business reputation and good will" and "imperiling his safety, life, liberty and right not to live in fear."  340 F. Supp. 2d at 459.  This Court held that such alleged injuries "simply are not the type of injuries to 'business or property' that are actionable under RICO" and dismissed the plaintiff's RICO claim.  *Id.*  Here, as in *Hollander,* the alleged injuries to Mr. Conradt's "good name and reputation" or "memory" similarly cannot form the basis of a RICO claim.

Plaintiff's attempt to avoid this result by alleging that a person's "memory" constitutes property under Texas law is unavailing.  Compl. ¶ 82.  Blackening the memory of the dead – which is what Plaintiff alleges happened here – is an interest protected by the law of defamation.  *See* Tex. Civ. Prac. & Rem. Code § 73.001 (2007) ("[a] libel is a defamation expressed in written or other graphic form that tends to blacken the memory of the dead or that tends to injury a living person's reputation . . . .").  It is well established under Texas law that such injuries are personal rather than proprietary.  *See Taylor v. Wilson*, 180 S.W.3d 627, 632 (Tex. App. 2005) ("The term 'personal injury' has been used . . . meaning a personal wrong, including libel. . . ."); *Houston Printing Co. v. Dement*, 44 S.W. 558, 560 (Tex. App. 1898) ("[L]ibel and slander are included in

the term personal injuries . . . . [I]njuries to the reputation and to the health have ever been classed and treated by law writers as personal injuries.").

      b.    *Plaintiff has Failed to Allege a Separate and Distinct Enterprise*

The RICO claim is based on an alleged violation of section 1962(c).  Compl. ¶ 81.  To state a claim under section 1962(c), Plaintiff must allege that a person conducted the affairs of an "enterprise" through a pattern of racketeering activity.  18 U.S.C. § 1962(c).  It is well settled in this Circuit that, under section 1962(c), a corporate entity may not be both the alleged enterprise and the person who allegedly conducts the affairs of that enterprise.  *See Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.,* 30 F.3d 339, 344 (2d Cir. 1994) (under § 1962, the RICO "person" who conducts the affairs of the RICO "enterprise" must be distinct from the enterprise); *Bennett v. United States Trust Co. of New York,* 770 F.2d 308, 315 (2d Cir. 1985) ("[W]e follow the majority view and hold that under section 1962(c) a corporate entity may not be simultaneously the 'enterprise' and the 'person' who conducts the affairs of the enterprise through a pattern of racketeering activity.").

Here, Plaintiff alleges that NBC/Dateline is the enterprise.  Compl. ¶¶ 60-61, 79.  However, since NBC is the entity being sued, it is considered the RICO "person" and cannot also be the "enterprise." *Bennett,* 770 F.2d at 315; *see also Sound Video Unlimited, Inc. v. Video Shack, Inc.,* 700 F. Supp. 127, 135 (S.D.N.Y. 1988) (to the extent an entity is named as a defendant, it cannot also be the RICO enterprise); *Richter v. Sudman,* 634 F. Supp. 234 (S.D.N.Y. 1986) (same).  Plaintiff therefore has failed to allege an enterprise that is separate and distinct from the alleged pattern of racketeering activity.

Plaintiff's allegation that "employees, associates, agents and representatives of the defendant did conduct, and participate in the conduct of, the affairs of the 'Catch a Predator'

enterprise" does not salvage the RICO claim.  Compl. ¶¶ 60-61, 80.  The Second Circuit has held

that "the distinctness requirement may not be circumvented" by alleging a RICO enterprise that

"consists merely of a corporate defendant associated with its own employees or agents carrying

on the regular affairs of the defendant."  *Riverwoods,* 30 F.3d at 344; *see also R.C.M. Executive*

*Gallery Corp. v. Rols Capital Co.,* 901 F. Supp. 630, 639 (S.D.N.Y. 1995) (dismissing RICO

claim because the persons who conducted the alleged enterprise were all "employed by or

associated with" the alleged enterprise).  In this case, as in *Riverwoods* and *R.C.M.,* the alleged

enterprise (NBC/Dateline) and the persons who allegedly carried out its affairs ("employees,

associates, agents and representatives of the defendant") are not separate and distinct.  Plaintiff

therefore has not adequately alleged the existence of an enterprise for purposes of section

1962(c).

## II.    Plaintiff Fails to State a Claim for Violation of Section 1983 on Behalf of the Estate

To state a claim under Section 1983, a plaintiff must show "that (1) the challenged

conduct was attributable at least in part to a person who was acting under the color of state law

and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the

United States."  *Snider v. Dylag,* 188 F.3d 51, 53 (2d Cir. 1999).  Here, Plaintiff's section 1983

claim is based on the unsupported allegation that the acts of the police should be imputed to

NBC.  Compl. ¶¶ 10-11.  Even if Plaintiff could show that NBC acted under color of state law,

however, the Amended Complaint's allegations are insufficient to state a claim that NBC

deprived Mr. Conradt of any constitutional right.[3]

---

[3]       NBC denies the Estate's allegation that the conduct of the police officers is properly imputed to
NBC; indeed, the Estate cannot show that NBC took any action under color of state law in connection
with its coverage of the Murphy operation.  Nevertheless, for the purposes of this motion only, NBC will
not dispute this element of the cause of action.

Plaintiff claims that NBC deprived Mr. Conradt of his life, liberty and property without due process of law in violation of the Fourth and Fourteenth Amendments. Compl. ¶¶ 64, 65. First, Plaintiff asserts that NBC violated Mr. Conradt's Fourteenth Amendment rights by failing to prevent him from committing suicide. *Id.* ¶ 62. Second, Plaintiff contends that the Murphy police (and by imputation NBC) violated Mr. Conradt's Fourth Amendment rights by entering his home without a valid warrant. *Id.* ¶ 64. Neither alleged basis is sufficient to state a claim under section 1983.

a.      *NBC Did Not Owe Mr. Conradt a Duty to Protect Him from Suicide*

The general rule in Texas is that a party has no duty to prevent the suicide or attempted suicide of another and that suicide is an intervening cause that breaks the chain of causation. *See, e.g., Shell Oil Co. v. Humphrey,* 880 S.W.2d 170, 174 (Tex. App. 1994); *Jones v. Maynard*, No. 01-95-00908-CV, 1999 WL 191162, at *3 (Tex. App. Apr. 8, 1999). To avoid this rule, Plaintiff alleges that a "special relationship akin to the relationship that a prison has with an inmate" arose between NBC and Mr. Conradt and that this relationship "engendered a duty to protect him *inter alia* from suicide." Compl. ¶ 62. To sustain a Section 1983 claim based on this theory, however, Plaintiff must plead and prove, *inter alia*, that the police "acted in reckless disregard of a substantial risk to the detainee's safety because of a deliberate indifference to the detainee's needs." *Mroz v. City of Tonawanda*, 999 F. Supp. 436, 456 (W.D.N.Y. 1998). The law precludes liability "unless the custodial official knew of a substantial risk that the detainee might commit suicide and violated the detainee's rights by responding with deliberate indifference." *Hanrahan v. City of Norwich,* 959 F. Supp. 118, 122 n.6 (D. Conn.), *aff'd*, 133 F.3d 907 (2d Cir. 1997); *Mroz,* 999 F. Supp. at 456.

8

In *Hanrahan,* for example, a police officer committed suicide after being questioned by the police chief about his suspected involvement in a hit and run accident. His estate brought an action under section 1983 contending that the police chief violated the officer's due process rights by questioning him without taking precautions to protect him against a risk of self-inflicted harm. The court granted summary judgment dismissing the claims, finding that there was no evidence that the officer had threatened to commit suicide or exhibited any signs or symptoms of emotional disturbance that would put the police chief on notice of such a risk. 959 F. Supp. at 122. The *Hanrahan* court noted that it had found "no case in which a claim was tried to a jury in the absence of evidence that the official *knew* the person for whom he was responsible had threatened to commit suicide, displayed suicidal tendencies or exhibited other symptoms of emotional disturbance showing a vulnerability to suicide." *Id.* at 122 n.7 (emphasis added).

Similarly, in *Mroz,* the mother of a minor who committed suicide after being arrested claimed that the police violated the minor's due process rights. The court granted summary judgment, finding, *inter alia,* that the plaintiff had failed to show that the police had "*actual knowledge* that [the minor] posed a risk of suicide and therefore had the subjective intent to act or refuse to act with deliberate indifference to that risk." 999 F. Supp. at 457 (emphasis added); *see also id.* ("the record does not show the police had any information about [the minor's] mental health history"). Thus, the court concluded that "the record is devoid of any indication that at any time during his encounter with police [the minor] exhibited any suicidal behavior or made threats to kill himself [of which] the police officers had knowledge." *Id.*

Here, as in *Hanrahan* and *Mroz,* there is no allegation that NBC or the police had actual knowledge that Mr. Conradt posed a risk of suicide. The Amended Complaint does not allege that Mr. Conradt threatened to commit suicide or exhibited any signs to the police and NBC that

would put them on notice that he might take his own life. Nor does it allege that Mr. Conradt had a mental health history suggesting that he would commit suicide, much less that NBC had knowledge of any such history. Rather, the Amended Complaint affirmatively asserts that Mr. Conradt was a "nice, quiet, soft-spoken, hard-working, methodical, thorough and intelligent individual," who was "highly respected, courteous and easy to work alongside." Compl. ¶ 45.

Unable to allege any facts that would establish NBC knew of any risk, much less a substantial risk, that Mr. Conradt might commit suicide, Plaintiff instead offers the bare allegation that NBC was "deliberately indifferent." Compl. ¶ 63. The only support Plaintiff offers for this legal conclusion is the equally conclusory assertion that "it was foreseeable that Bill's emotional state might be frail in general, and that he might have a tendency to suicide in particular." *Id.* ¶ 62. Plaintiff offers no facts to support this assertion. As shown *supra*, the Court may not properly accept such unsupported allegations. *See* p. 3 *supra*. *See also Camarano v. City of New York,* 624 F. Supp. 1144, 1146 (S.D.N.Y. 1986) (conclusory allegation that defendant acted with "deliberate indifference" insufficient to support section 1983 claim). Moreover, reasonable foreseeability is an element of a negligence standard; it is well settled that "negligence is not deliberate indifference." *Brock v. Wright,* 315 F.3d 158, 164 (2d Cir. 2003); *see also Hanrahan,* 959 F. Supp. at 122-23 (custodial official's negligence does not violate due process).

       b.    *The Police Did Not Violate Mr. Conradt's Fourth Amendment Rights*

Plaintiff further asserts that the police violated Mr. Conradt's Fourth Amendment rights by entering his house without a valid warrant. Compl. ¶¶ 29-32. However, Plaintiff concedes that the officers obtained both an arrest warrant and a search warrant prior to entering Mr.

Conradt's residence.  *Id.*  As a matter of law, either warrant provided an independent basis for the police to enter the house.

"An arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 603 (1980); *see also United States v. Lovelock*, 170 F.3d 339, 343 (2d Cir. 1999).  There is no allegation that the arrest warrant obtained by the Murphy police was invalid or that the police did not have probable cause to obtain it.  While Plaintiff alleges that the search warrant had the wrong date and county on its face, Compl. ¶ 32, this allegation does not transform entry into the house into a Fourth Amendment violation.  Plaintiff's allegations make clear that the mistake was an unintentional typographical error.  *See id.* ("search warrant was 'spun-off' from a search warrant that addressed a search in a different county and month").  "[C]ourts usually consider typographical errors an insufficient reason to invalidate an otherwise valid search warrant." *United States v. Waker*, 463 F. Supp. 2d 348, 359-60 (W.D.N.Y. 2006) (rejecting Fourth Amendment challenge to warrant containing an unintentional error in the execution date of the warrant); *see also United States v. White*, 356 F.3d 865, 869 (8th Cir. 2004) (rejecting Fourth Amendment challenge to search warrant containing incorrect date where officer failed to change date from previous warrant).  And, although Plaintiff also suggests that the search warrant was invalid because "no mention of [NBC's] involvement ever was made to the issuing judge," Compl. ¶ 32, the Amended Complaint correctly does not allege that anyone from NBC entered the house with the police, *see e.g. id.* ¶ 35 (alleging that a sergeant and a detective knocked on the door); ¶ 38 (alleging that the police entered the yard, forced open the door to the house and entered); ¶ 41 ("once the police were inside, they stepped through a doorway").  Accordingly, Plaintiff's

allegations fail to support the claim that the police violated Mr. Conradt's Fourth Amendment rights.

### III. Plaintiff Fails to State a Claim for Intentional Infliction of Emotional Distress on Behalf of the Estate

The Estate's cause of action alleging the tort of intentional infliction of emotional distress, *see* Compl. ¶¶ 67-69, reflects a style of pleading that is apparently all too common in the Texas courts. As recently as 2005, the Texas Supreme Court was obliged to admonish litigants for "the tenth time in little more than six years" that the tort "was never intended [to be] an easier and broader way to pursue claims already protected by our expanding civil and criminal laws." *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 815, 818 (Tex. 2005); *see also, e.g., Hoffmann-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004); *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998). Rather, the state's highest court has explained, the tort's "exacting requirements" are satisfied only in those rare instances in which it will not serve as a vehicle "to supplant or duplicate existing statutory or common-law remedies." *Creditwatch, Inc.*¸ 157 S.W.3d at 815-16. Thus, "[w]here the gravamen of a plaintiff's complaint is really another tort" or statutory cause of action, the intentional infliction tort cannot properly be invoked to execute an end-run around those causes of action simply because of a "plaintiff's failure to establish his or her [underlying] claim." *Hoffman-La Roche, Inc.*, 144 S.W.3d at 447-48; *see Almond v. Tarver*, 468 F. Supp. 2d 886, 904-05 (E.D. Tex. 2006) ("a plaintiff may not assert a claim for intentional infliction of emotional distress merely because of his inability to prevail on another theory of relief designed to address the gravamen of his complaint").

In this case, the claim for intentional infliction seeks to accomplish precisely what the Texas Supreme Court has expressly and repeatedly forbidden. Simply put, in a case in which the "gravamen" of the Amended Complaint sounds alternatively in the deficient federal claims it has

asserted, and in state law claims for wrongful death, defamation and malicious prosecution that Plaintiff could not plead in good faith, she seeks to circumvent the limitations on those causes of action by invoking the intentional infliction tort.  The tort is simply "not available" under these circumstances.  *Lowe v. Hearst Commc'ns, Inc.*, 414 F. Supp. 2d 669, 675 (W.D. Tex. 2006), *aff'd*, 487 F.3d 246 (5th Cir. 2007); *see also Creditwatch, Inc.*, 157 S.W.3d at 816 (where plaintiff's allegations are covered by other existing causes of action, he "cannot assert them as intentional infliction claims [even where] those avenues may . . . be barred").

According to the Amended Complaint, NBC caused Mr. Conradt's death and "blackened his memory" by informing the police that he had contacted a decoy online and insisting that the police obtain arrest and search warrants for Mr. Conradt and his home respectively.  Compl. ¶¶ 28, 47.  The Amended Complaint further alleges that, in connection with the execution of those warrants, the police restrained Mr. Conradt's ability to fend for himself thereby "impos[ing] upon [him] harsh limitations to act on his own behalf" and assumed a duty to prevent his suicide.  *Id.* ¶¶ 34-36, 62.  As a result, Mr. Conradt allegedly suffered injury to his reputation, leading to severe emotional distress and culminating in his suicide.  *See*, *e.g.*, *id.* ¶¶ 41, 45-47, 68.  The "gravamen" of these allegations is addressed by at least four recognized causes of action under Texas and federal law.

*First*, the premise of Plaintiff's allegations is that NBC caused Mr. Conradt's suicide. Yet the Estate does not, because it cannot, assert a claim for wrongful death.  Under Texas law, only a surviving parent, spouse or child may prosecute such a claim.  *See* Tex. Civ. Prac. & Rem. Code § 71.004.  As Mr. Conradt's sister, Plaintiff has no standing to pursue a wrongful death claim in the name of his Estate.  *See* Compl. ¶¶ 4, 48, 50; *Andrade v. Chojnacki*, 65 F. Supp. 2d 431, 448 (W.D. Tex. 1999) (under Texas law, administrator of an estate cannot prosecute an

action for wrongful death).  The intentional infliction claim is an improper attempt to circumvent the plain language of the wrongful death statute.

Second, the allegation that NBC improperly instigated Mr. Conradt's arrest is the province of the common law tort of malicious prosecution.  See, e.g., Klein & Assocs. Political Relations v. Port Arthur Indep. Sch. Dist., 92 S.W.3d 889, 898 (Tex. App. 2002) (unavailability of intentional infliction tort "does not mean there is no remedy for wrongful litigation; for example, a malicious prosecution claim may provide a remedy under appropriate circumstances").  To state a claim for malicious prosecution under Texas law, Plaintiff must demonstrate, among other things, that Mr Conradt was innocent and that there was no probable cause to instigate his arrest.  See Kroger Texas Ltd. P'ship v. Suberu, 216 S.W.3d 788, 792 n.3 (Tex. 2006).  Plaintiff cannot satisfy either of these requirements.  Nevertheless, the Texas Court of Appeals has held that where, as here, "[t]he gravamen of [plaintiff's] complaint as pleaded rest[s]," inter alia, on claims for "malicious prosecution," there is "no gap left to fill with an IIED cause of action," without regard to the merits of the malicious prosecution claim itself. Moser v. Roberts, 185 S.W.3d 912, 916 (Tex. App. 2006).

Third, the Amended Complaint's allegations with respect to the execution of the search and arrest warrants form the basis of the Estate's claim under section 1983.  See Compl. ¶¶ 28-32, 40, 64-66, 75-76.  Those allegations cannot also undergird a claim for intentional infliction. See, e.g., Bittakis v. City of El Paso, 480 F. Supp. 2d 895, 923 (W.D. Tex. 2007) ("[b]ecause Plaintiff's claims against Defendants for intentional infliction of emotional distress are based on the same operative facts as his claims against those defendants for alleged civil rights violations, Plaintiff cannot pursue his intentional infliction . . . claims" as a matter of law).

*Fourth*, Plaintiff's alleged factual basis for the contention that NBC caused Mr. Conradt to suffer emotional distress – *i.e.,* when he saw law enforcement arrive at his residence accompanied by television cameras, he realized that his sexually explicit "chatting" with a minor online would be revealed publicly – is based entirely on the perceived injury such disclosures would visit upon his reputation.  *See* Compl. ¶¶ 26-27, 35-36, 41, 45-47.  Emotional distress resulting from perceived harm to one's reputation is addressed by the tort of defamation, a cause of action that Plaintiff could not sustain and has not pursued.  As a matter of Texas law, a cause of action for defamation must have accrued prior to death.  *See, e.g.*, *Channel 4, KGBT v. Briggs*, 759 S.W.2d 939, 940 n.1 (Tex. 1988) ("one cannot bring a cause of action for the defamation of a person already dead").  NBC broadcast nothing about Mr. Conradt until after his death.  *See* Compl. ¶¶ 26, 43**.**

Further, pursuant to both Texas law and the United States Constitution, a public official such as Mr. Conradt may not recover damages for emotional distress caused by the publication of accurate information about a matter of public concern.  *See, e.g.*, *Hustler Magazine v. Falwell*, 485 U.S. 46, 55-56 (1988) ("public officials may not recover for the tort of intentional infliction of emotional distress . . . without showing in addition that the publication contains a false statement of fact which was made with 'actual malice'"); *Channel 4, KGBT*, 759 S.W.2d at 942 ("a public official . . . asserting a claim for intentional infliction of emotional distress based upon a defamatory publication must meet those requirements set out in *New York Times* [*v. Sullivan*, 376 U.S. 254 (1964)] and its progeny").  In this case, Plaintiff does not assert, nor could she, either that Mr. Conradt was falsely accused of participating in an on-line, sexually explicit "chat" with a minor (itself a felony in Texas, *see* note 2 *supra*) or that the fact that a public official had done so is not a matter of legitimate public concern.  Under such circumstances, a plaintiff may

not plead around the state law and constitutional requirements that cabin the torts of defamation and intentional infliction. *See, e.g.*, *Channel 4, KGBT*, 759 S.W.2d at 942; *Rogers v. Dallas Morning News, Inc.*, 889 S.W.2d 467, 474 (Tex. App. 1994) (plaintiff could not recover for intentional infliction where he could not carry his burden of proving falsity); *Provencio v. Paradigm Media, Inc.*, 44 S.W.3d 677, 679-83 (Tex. App. 2001) (postcard sent by journalist to plaintiff, a registered sex offender, falsely indicating that it was from the Texas Department of Public Safety and asking him to verify his address, would not support either defamation or intentional infliction claim). "'To hold otherwise would permit litigants to circumvent constitutional defenses against the tort of libel by pleading torts that do not require falsity or actual malice.'" *Id.* at 682-83 (quoting *Evans v. Dolcefino*, 986 S.W.2d 69, 79 (Tex. App. 1999)).

In short, the "gravamen" of the Amended Complaint's allegations is the proper subject matter of causes of action other than the intentional infliction tort. As the Texas Supreme Court has made plain, if the latter "tort is to remain viable where 'gaps' still remain, litigants and judges cannot entertain it as a catch-all [remedy] that avoids the careful balancing behind alternate legal claims." *Creditwatch, Inc.*, 157 S.W.3d at 818.

Plaintiff cannot sustain a claim for intentional infliction for the additional reason that the alleged conduct was not "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Cox Texas Newspapers, L.P. v. Wootten*, 59 S.W.3d 717, 724 (Tex. App. 2001) (citation omitted) (finding that taking of photographs of plaintiff's dead wife at funeral home did not support intentional infliction claim). "It is for the court to determine, in the first instance, whether a defendant's conduct was extreme and outrageous" within the contemplation

16

of the tort. *Hoffmann La Roche, Inc.*, 144 S.W.3d at 445. The Amended Complaint alleges that NBC conducted a news investigation into a subject of manifest public concern – sexual predators targeting minors via the Internet. In connection with that investigation, NBC purportedly informed law enforcement of Mr. Conradt's suspected criminal activity, urged them to obtain warrants and were outside Mr. Conradt's house when they attempted to arrest him. Such conduct cannot be held to be extreme and outrageous as a matter of Texas law.[4]

## IV.    Plaintiff Fails to State a Claim for Negligence on Behalf of the Estate.

The Estate's negligence claim fails for the same reason as its cause of action for intentional infliction of emotional distress – it too constitutes an impermissible effort to plead around the requirements of other causes of action. Specifically, the Amended Complaint contends that, by reporting Mr. Conradt's criminal activity to the Murphy Police Department, NBC breached a duty "not to push law enforcement agencies to do what they otherwise would not do," *i.e.,* to procure and execute search and arrest warrants. Compl. ¶¶ 28, 71, 95. As we have explained at page 14 *supra*, however, these allegations describe the common law tort of malicious prosecution. Courts applying Texas law have repeatedly held that it does not countenance negligence actions that attempt to avoid the more stringent pleading requirements of the malicious prosecution tort. *See, e.g., Smith v. Sneed*, 938 S.W.2d 181, 185 (Tex. App. 1997) (to hold "that [a defendant's] negligence is actionable would in substance convert the tort of

---

[4]    *See e.g., A.H. Belo Corp. v. Corcoran*, 52 S.W.3d 375, 383-84 (Tex. App. 2001) (media defendants' conduct in interviewing plaintiff's daughter and daughter's mother, who had kidnapped child and was in hiding, and in failing to notify plaintiff or authorities of their whereabouts did not support intentional infliction claim); *San Antonio Credit Union v. O'Connor*, 115 S.W.3d 82, 101-02 (Tex. App. 2003) (balanced against citizen's duty to report criminal activity, filing of criminal complaint, even when question exists as to whether defendant believed allegations to be true, is "not sufficiently outrageous to permit recovery of intentional infliction of emotional distress."); *accord Reeves v. Fox Television Network*, 983 F. Supp. 703, 711 (N.D. Ohio 1997) ("conduct in videotaping Plaintiff's encounter with the police and broadcasting a portion of that videotape on the 'COPS' television show" does not "constitute[] outrageous and extreme conduct, beyond all possible bounds of decency").

malicious prosecution to one of negligent prosecution"); *Campbell v. City of San Antonio*, 43 F.3d 973, 980 (5th Cir. 1995) (dismissing negligence claim under Texas law because the "torts which are most analogous to [the plaintiff's] situation, [are] libel and slander, and malicious prosecution").

Like its intentional infliction claim, moreover, the alleged harms giving rise to the Estate's negligence claim are essentially reputational – *i.e.,* that the "stigma of suicide has . . . blacken[ed]" Mr. Conradt's memory.  Compl. ¶ 47.   In adjudicating analogous negligence claims, Texas court have recognized that injury to reputation is the province of the tort of defamation and "the Texas Supreme Court has expressly refused to recognize" negligence actions "that merely duplicate the remedy of defamation and are creatively pled in an attempt to avoid the constitutional protections mandated by the First Amendment and the Texas Constitution."  *Texas Beef Group v. Winfrey*, 11 F. Supp. 2d 858, 864 (N.D. Tex. 1998), *aff'd*, 201 F.3d 680 (5th Cir. 2000).  "It would be ironic," the Texas Supreme Court has noted, "if an individual could avoid all the constitutional restrictions on defamation actions merely by disguising such claims in negligence terms."  *Bird v. W.C.W.*, 868 S.W.2d 767, 771-72 n.7 (Tex. 1994) (negligence action barred where it alleged "basically defamation damages").

In addition, Plaintiff fails to plead facts establishing that NBC owed Mr. Conradt a legally cognizable duty sufficient to support a cause of action for negligence in any event. Plaintiff contends that, by "inform[ing] the police in Murphy that [Mr. Conradt] had contacted a decoy online," NBC breached a duty "not to push law enforcement agencies to do what they otherwise would not do."  Compl. ¶¶ 28, 71, 95.  Texas law, however, recognizes no such duty; to the contrary, it is well-established that a defendant cannot be liable in negligence for reporting crimes to law enforcement.  *See, e.g., Gonzales v. City of Corpus Christi*, No. C.A. C-05-280,

2006 WL 1406852, at *5 (S.D. Tex. May 19, 2006) ("Under Texas law . . . the fact that

Defendants called the police, even for 'no reason,' cannot sustain a cause of action for

negligence"), *aff'd on other grounds¸* 22 F. App'x 342 (5th Cir. 2007).  Indeed, as a matter of

public policy, Texas law affords "wide latitude in reporting facts to prosecuting authorities to

ensure that the exposure of crime is not discouraged."  *Sneed,* 938 S.W.2d at 184.  For that

reason, the Texas Supreme Court has expressly held that "a citizen has a clear legal right to

report criminal misconduct to authorities," even when the report turns out to be false.  *Wal-Mart

Stores, Inc. v. Rodriguez,* 92 S.W.3d 502, 507 (Tex. 2002).

Plaintiff further alleges that NBC owed Mr. Conradt a duty "to protect against such risks

as suicide."  Compl. ¶ 71.  However, Texas law will not impose a duty to protect others from

unforeseeable harms.  *See e.g. McCullough v. Godwin,* 214 S.W.3d 793, 805-06 (Tex. App.

2007).  Although the Amended Complaint asserts that Mr. Conradt's suicide was a foreseeable

result of NBC's actions, *see id.* ¶¶ 32, 62, Plaintiff's failure to plead facts supporting that

assertion renders it deficient as a matter of law, especially where, as here, the Amended

Complaint contains no facts conceivably supporting the contention that Mr. Conradt's suicide

was reasonably foreseeable *to NBC.  See, e.g., Perez v. Lopez*, 74 S.W.3d 60, 69 (Tex. App.

2002) (locksmiths who removed trigger guard of firearm at teenager's request had no duty to

prevent suicide where plaintiff presented no evidence that anyone, including the family and the

victim himself, "said or did anything to put [defendants] on notice of [the victim's] intent to

commit suicide").  In Texas, when "suicide [is] not reasonably foreseeable" by the defendant, the

"intentional act" of taking one's own life "constitutes an independent cause" of death, for which

the defendant's alleged negligence cannot properly be deemed responsible.  *Speer v. United

States*, 512 F. Supp. 670, 678-79 (N.D. Tex. 1981), *aff'd*, 675 F.2d 100 (5th Cir. 1982).

**V.     Plaintiff Fails to State a Claim for Unjust Enrichment on Behalf of the Estate**

Plaintiff's unjust enrichment claim is based on the allegation that, as the result of the conduct alleged in the Amended Complaint, NBC was "enriched at Bill's expense." Compl. ¶ 100. "The doctrine of unjust enrichment," however, "does not present an independent cause of action, but rather 'belongs to the measure of damages known as quasi-contract or restitution,' the purpose of which is 'to place an aggrieved plaintiff in the position he occupied prior to his dealings with the defendant.'" *Best Buy Co. v. Barrera,* 214 S.W.3d 66, 73 (Tex. App. 2006) (citation omitted). "The phrase 'unjust enrichment' characterizes the result whereby one individual fails to make restitution of benefits received under circumstances giving rise to an implied or quasi-contract." *LaChance v. Hollenbeck,* 695 S.W.2d 618, 620 (Tex. App. 1985).

Texas courts typically apply the doctrine to make whole a party to a business transaction who has suffered economic harm but has no contract on which to base a claim. *See Best Buy,* 214 S.W.3d at 67 ("Unjust enrichment 'applies the principles of restitution to disputes which for one reason or another are not governed by a contract between the contending parties.'"); *First Union Nat'l Bank v. Richmont Capital Partners,* 168 S.W.3d 917, 931 (Tex. App. 2005) ("[u]njust enrichment claims are based on quasi-contract and are predicated on the absence of an express contract"). Recovery under principles of unjust enrichment may also be appropriate "when a contemplated agreement is unenforceable, impossible, not fully performed, thwarted by mutual mistake or void for legal reasons." *Burlington N. R.R. Co. v. Sw. Elec. Power Co.,* 925 S.W.2d 92, 97 (Tex. App. 1996), *aff'd,* 966 S.W.2d 467 (Tex. 1998).

Here, there is no allegation giving rise to an implied or quasi-contract between NBC and Mr. Conradt; there are no allegations of any business dealings whatsoever between them. Nor is there any allegation that Mr. Conradt suffered any economic harm. To the contrary, the only

claims asserted are for personal injury. We are aware of no cases in which a Texas court has applied the doctrine of unjust enrichment as a remedy for such injuries.

## VI.    Plaintiff Fails to State a Claim on Her Own Behalf

Beyond those causes of action asserted on behalf of the Estate, Patricia Conradt attempts to recover damages in her own name under various Texas tort law theories. Like the Estate, she pleads claims of negligence and intentional infliction of emotional distress in her individual capacity. *See* Compl. ¶¶ 91-92 (intentional infliction); *id.* ¶¶ 95-97 (negligence). In addition, she alleges that she is entitled to relief under two branches of the Texas tort of invasion of privacy. *See id.* ¶¶ 84-85 (intrusion); *id.* ¶¶ 88-89 (publication of private facts).

As we have explained with respect to the analogous claims asserted on behalf of the Estate, Texas law does not recognize causes of action for intentional infliction or negligence where the gravamen of a plaintiff's complaint is subsumed by other, more narrowly defined causes of action. The case law establishing that proposition applies equally to the claims asserted by Ms. Conradt and will therefore not be repeated here. *See* pp. 12-18 *supra*.[5] And, as we explain *infra*, Ms. Conradt lacks standing to pursue any claims in her individual capacity and has not stated viable causes of action for invasion of privacy in any event.

### a.    Plaintiff Lacks Standing to Assert Claims in Her Own Name.

Texas law has uniformly rebuffed efforts by plaintiffs who, like Ms. Conradt, seek to recover in tort for asserted injuries to their own reputations and right to privacy, as well as accompanying emotional distress, resulting from conduct directed not at them, but at their relatives. Thus, for example, Texas courts "have repeatedly . . . held that unless the plaintiff

---

[5]    In addition, Ms. Conradt fails to plead viable causes of action for either negligence or intentional infliction for the further reasons set forth at pp. 16-19 *supra* with respect to the analogous claims asserted by the Estate.

herself is the particular person with references to whom defamatory statements were made, she has no cause of action." *Ritzmann v. Weekly World News, Inc.*, 614 F. Supp. 1336, 1339 (N.D. Tex. 1985). For this reason, Texas law bars relatives from recovering damages that purportedly arise from the defamation of their deceased kin. *See, e.g., Renfro Drug v. Lawson*, 160 S.W.2d 246, 249 (Tex. App. 1942) ("[T]he law does not contemplate . . . defamation of the dead[] as causing any special damage to another individual, though related to the deceased, and therefore it cannot be made the basis of recovery in a civil action.").

In *Gonzales v. Times Herald Printing Co.*, 513 S.W.2d 124, 124-25 (Tex. App. 1974), for example, a wife brought suit against a newspaper, claiming that reports of her husband's death in connection with a "heroin mini-war" blackened his memory and "expos[ed] her and her children to public hatred." The court held "as a matter of law from plaintiff's pleadings . . . that the publication of the articles did not create any cause of action in her favor." *Id.* at 125. Specifically, the court explained that:

> a libel upon the memory of a deceased person . . . does not give [his relatives] any right of action, although they may have thereby suffered mental anguish or sustained an impairment of their social standing among a . . . community in which they live by the disclosure that they were related to the deceased.

*Id.* at 126 (citations omitted).

Similarly, under Texas law, privacy is a personal right and an action for invasion of privacy "terminates upon the death of the person whose privacy is invaded." *Moore v. Charles B. Pierce Film Enters., Inc.*, 589 S.W.2d 489, 491 (Tex. App. 1979). Ms. Conradt alleges that NBC's broadcast of information concerning her brother and depictions of his home constitute a tortious invasion of her privacy. *See* Compl. ¶ 49. As a matter of Texas law, however, a "deceased's relatives may not maintain an action for invasion of privacy, either based on their own privacy interests or as a representative for the deceased, where the alleged invasion was

directed primarily at the deceased." *Justice v. Belo Broad. Corp.*, 472 F. Supp. 145, 147 (N.D.

Tex. 1979). The Texas courts have declared that, to allow such suits would improperly

> open the courts to persons whose only relation to the asserted wrong is that they
> are related to the victim . . . and were therefore brought unwillingly into the
> limelight. Every defamation, false imprisonment, and malicious prosecution
> would then be an actionable invasion of privacy of the relatives of the victim.

*Moore*, 589 S.W.2d at 491 (citations omitted).

Texas courts also will not permit a plaintiff to pursue a claim for intentional infliction of

emotional distress unless the defendant's conduct is "about or directed at" the plaintiff. *Doe v.*

*Mobile Video Tapes, Inc.*, 43 S.W.3d 40, 49 (Tex. App. 2001). Accordingly, in this case, where

Ms. Conradt does not and cannot allege that NBC's conduct was either "about or directed at"

her, she has no standing under Texas law to maintain a cause of action for intentional infliction.

*Id.*; *accord Mineer v. Williams*, 82 F. Supp. 2d 702, 707 (E.D. Ky. 2000) (statements made in

broadcast about plaintiff's son did not give rise to claim for intentional infliction).

> b. *Plaintiff Fails to State a Claim for Invasion of Privacy in Her Own Name*

Even assuming Ms. Conradt had standing to assert privacy claims on her own behalf, the

Amended Complaint fails to state a claim under either branch of the privacy tort on which she

purports to rely. First, under Texas law, a claim for the tort of "intrusion," Compl. ¶¶ 84-85,

requires an intentional intrusion upon the plaintiff's seclusion, solitude, or private affairs, *see*

*Vaughn v. Drennon*, 202 S.W.3d 308, 320 (Tex. App. 2006). In that regard, Ms. Conradt alleges

only that she possessed an "expectation of privacy" in "the home of [her] childhood," which was

allegedly violated when law enforcement, ostensibly at the behest of NBC, entered that home.

Compl. ¶ 49. The Amended Complaint does not allege, however, that the home belonged to Ms.

Conradt, that she resided there at the time of the alleged intrusion, or that she was present there

when the alleged intrusion took place. To the contrary, she concedes that her brother owned the

home, lived there alone, and was by himself when police attempted to serve a warrant to search it. *Id.* ¶ 26. "The core of the tort of [intrusion] . . . is the offense of prying into the private domain of another, not the publicity that may result from such prying." *Clayton v. Richards*, 47 S.W.3d 149, 153 (Tex. App. 2001). Where, as here, there has concededly been no entry into Ms. Conradt's own home or any other private space she occupies, she cannot maintain a cause of action for intrusion as a matter of law. *See Vaughn*, 202 S.W.3d at 320 ("This type of invasion of privacy is generally associated with either a physical invasion of a person's property, eavesdropping on another's conversation with the aid of wiretaps, microphones, or spying."); *Cornhill Ins. PLC v. Valsamis, Inc.,* 106 F.3d 80, 85 (5th Cir. 1997) (where plaintiff does not allege either a physical invasion of her property, an eavesdropping on her conversations with the aid of wiretaps, microphones, or spying, she has not stated a "cognizable . . . cause of action for invasion of privacy under Texas law").

Second, to establish a claim for the public disclosure of private facts, *see* Compl. ¶¶ 87-90, Ms. Conradt must show that publicity was given to a purely private matter in which the public had no legitimate interest. This she cannot do, for the reasons discussed at pp. 15-16 *supra*. Simply put, the alleged criminal wrongdoing of her brother, a public official, is newsworthy as a matter of law. *See, e.g. Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 492 (1975) ("The commission of crime [and] prosecutions resulting from it . . . are without question events of legitimate concern to the public"); *Lowe v. Hearst Commc'ns, Inc.,* 487 F.3d 246, 250-51 (5th Cir. 2007) ("Given the broad interpretation of newsworthiness, particularly with regards to alleged criminal activity, an article describing [potential wrongdoing] by prominent local lawyers . . . is a matter of public concern."). Ms. Conradt's apparent theory – that NBC forfeited the right to report this concededly newsworthy information because it notified police of her brother's

24

unlawful conduct in the first place, *see* Compl. ¶ 43 – finds no support in the law of Texas or any

other jurisdiction.  *Cf. Baugh v. CBS, Inc.,* 828 F. Supp. 745, 753 (N.D. Cal. 1993) (rejecting

contention that defendant "forfeited its news account protection" because it allegedly

sensationalized events that occurred in plaintiff's home for broadcast).  As a result, Ms. Conradt

cannot establish an essential element of a private facts claim – *i.e.*, that the allegedly private facts

were *not* matters of public interest.  *See Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473-75

(Tex. 1995) (to recover for private facts tort, plaintiff must establish "essential element" that

"matter publicized is not legitimate public concern").

## CONCLUSION

For the foregoing reasons, Plaintiff has failed to state a claim on which relief may be

granted.  NBC respectfully submits that the Court should dismiss this action with prejudice.

Dated:    New York, New York          Respectfully submitted,
          October 3, 2007


                                        _/s/  Hilary Lane_____

                                        Hilary Lane (HL-0829)
                                        Susan Weiner (SW-3531)
                                        NBC Universal, Inc.
                                        30 Rockefeller Plaza
                                        New York, New York 10112
                                        Telephone (212) 664-4444
                                        Facsimile (212) 664-6572


                                        Lee Levine (*pro hac vice* application pending)
                                        Amanda M. Leith (*pro hac vice* application pending)
                                        Levine Sullivan Koch & Schulz, L.L.P.
                                        321 West 44th Street, Suite 510
                                        New York, NY 10036
                                        (212) 850-6100
                                        (212) 850-6299

                                        *Attorneys for Defendant NBC Universal, Inc.*