UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
PATRICIA CONRADT, Individually, and as Administratrix
of the Estate of LOUIS WILLIAM CONRADT, JR., deceased,                07-CV-06623

                                   Plaintiff,

                              –against–

NBC UNIVERSAL, INC.,                                                     (DC)(GWG)
                              Defendant.
-------------------------------------------------------------------------X

**MEMORANDUM OF LAW IN
OPPOSITION TO MOTION FOR DISMISSAL OF
AMENDED COMPLAINT**

Bruce Baron, Esq. (BB7297)
BARON ASSOCIATES P.C.
*Attorneys for Plaintiff*
2509 Avenue U
Brooklyn, New York 11229
(718) 934-6501

October 23, 2007

**TABLE OF CONTENTS**

1    PRELIMINARY STATEMENT

1    STATEMENT OF FACTS

2    STANDARD OF REVIEW

3    OVERVIEW OF THE CLAIMS

4    AS ADMINISTRATRIX, PATRICIA STATES A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

6    AS ADMINISTRATRIX, PATRICIA STATES A CLAIM FOR NEGLIGENCE.

7    THE SUICIDE WAS FORESEEABLE.

12    AS ADMINISTRATRIX, PATRICIA STATES A CLAIM PURSUANT TO THE CIVIL RIGHTS ACT.

13    The defendant was a dominant participant in joint action with the police.

13    The Fourth Amendment secures against an unreasonable search.

15    The entry into Bill's home was without a valid warrant, and thus warrantless.

15    The defendant engaged in false arrest.

16    Section 1983 provides a remedy for a violation of the Due Process Clause.

16    Bill's demise was well within the river of causation.

19    AS ADMINISTRATRIX, PATRICIA STATES A CLAIM PURSUANT TO RICO.

23    AS ADMINISTRATRIX, PATRICIA STATES A CLAIM FOR UNJUST ENRICHMENT.

24    IN HER INDIVIDUAL CAPACITY, PATRICIA STATES CLAIMS FOR INFLICTION OF EMOTIONAL DISTRESS.

24    IN HER INDIVIDUAL CAPACITY, PATRICIA STATES CLAIMS FOR INVASION OF PRIVACY.

25    CONCLUSION

## TABLE OF AUTHORITIES

Cases

21 n 14  *131 Main Street Associates v. Manko*, 897 F.Supp. 1507 (S.D.N.Y. 1995)

5 n 4  *A.H. Belo Corp. v. Corcoran*, 52 S.W.3d 375 (Tex.App. 2001)

13  *Adickes v. S. H. Kress & Co.*, 398 U.S. 144 (1970)

11  *Allen v. Zurich Ins. Co.*, 667 F.2d 1162 (4th Cir. 1982)

5 n 4  *Almond v. Tarver*, 468 F.Supp.2d 886 (E.D.Tex. 2006)

20  *Amendolare v. Schenkers Intern. Forwarders, Inc.*, 747 F.Supp. 162 (E.D.N.Y. 1990)

22 n 16  *Aquilino v. U.S.*, 363 U.S. 509 (1960)

7  *Archibeque v. North Texas State Hospital-Wichita Falls Campus*, 115 S.W.3d 154 (Tex.App. 2003)

14  *Ayeni v. Mottola*, 35 F.3d 680 (2nd Cir. 1994), *cert. den.*, 514 U.S. 1062 (1995)

22 n 19  *Bankers Trust Co. v. Rhoades*, 741 F.2d 511 (2d Cir. 1984), *vacated*, 473 U.S. 922 (1985)

10  *Barbera v. Smith*, 654 F.Supp. 386 (S.D.N.Y. 1987)

24 n 25  *Baugh v. CBS, Inc.*, 828 F.Supp. 745 (N.D.Cal. 1993)

3 n 1  *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007)

4 n 2  *Bender v. City of New York*, 78 F.3d 787 (2nd Cir. 1996)

19 n 10  *Bennett v. U.S. Trust Co. of New York*, 770 F.2d 308 (2nd Cir. 1985), *cert. den.*, 474 U.S. 1058 (1986)

13  *Berger v. Hanlon*, 129 F.3d 505 (9th Cir. 1997), *cert. den.*, 525 U.S. 961, *cert. granted*, 525 U.S. 981 (1998), *judgment vacated*, 526 U.S. 808, *opinion reinstated*, 188 F.3d 1155, *cert. den.*, 526 U.S. 1154 (1999)

20  *Bernstein v. IDT Corp.*, 582 F.Supp. 1079 (D.Del. 1984)

23 n 21  *Best Buy Co., Inc. v. Barrera*, 214 S.W.3d 66 (Tex.App. 2006)

7 n 6  *Bird v. W.C.W.*, 868 S.W.2d 767 (Tex. 1994)

5  *Bittakis v. City of El Paso*, 480 F.Supp.2d 895 (W.D.Tex. 2007)

17  *Blue Cross and Blue Shield of New Jersey, Inc. v. Philip Morris, Inc.*, 36 F.Supp.2d 560 (E.D.N.Y. 1999)

22 n 16  *Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972)

17  *Bowers v. DeVito*, 686 F.2d 616 (7th Cir. 1982)

6     *Boyles v. Kerr*, 855 S.W.2d 593 (Tex. 1993)

6     *Bradstreet Co. v. Gill*, 9 S.W. 753 (Tex. 1888)

12     *Branum v. Clark*, 927 F.2d 698 (2nd Cir. 1991)

15     *Brewer v. Blackwell*, 692 F.2d 387 (5th Cir. 1982)

10     *Bridgeway Corp. v. Citibank*, 45 F.Supp.2d 276 (S.D.N.Y. 1999), *aff'd*, 201
       F.3d 134 (2nd Cir. 2000)

13     *Brock v. Wright*, 315 F.3d 158 (2nd Cir. 2003)

4     *Brown v. New York City Health and Hospitals Corp.*, 648 N.Y.S.2d 880
       (2nd Dept. 1996)

2     *Bruce v. U.S. Dept. of Justice*, 314 F.3d 71 (2nd Cir. 2002)

9     *Burchett v. State Dept. of Corrections*, 564 P.2d 87 (Ariz.App. 1977)

21     *Burke v. Dowling*, 944 F.Supp. 1036 (E.D.N.Y. 1995)

16, 17     *Burke v. New York, New Haven & Hartford Railroad Co.*, 267 F.2d 894
       (2nd Cir. 1959)

23 n 21     *Burlington Northern R. Co. v. Southwestern Elec. Power Co.*, 925 S.W.2d
       92 (Tex.App. 1996), *aff'd*, 966 S.W.2d 467 (Tex. 1998)

4     *Cain v. Hearst Corp.*, 878 S.W.2d 577 (Tex. 1994)

15     *Camara v. Municipal Court of City and County of San Francisco*, 387 U.S.
       523 (1967)

12     *Camarano v. City of New York*, 624 F.Supp. 1144 (S.D.N.Y. 1986)

6     *Campbell v. City of San Antonio*, 43 F.3d 973 (5th Cir. 1995)

10     *Carlisle v. Frisbie Memorial Hosp.*, 888 A.2d 405 (N.H. 2005)

4 n 2     *Carrero v. New York City Housing Authority*, 890 F.2d 569 (2nd Cir. 1989)

19 n 10     *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001)

20     *Center Cadillac, Inc. v. Bank Leumi Trust Co. of New York*, 808 F.Supp.
       213 (S.D.N.Y. 1992), *aff'd*, 99 F.3d 401 (2nd Cir. 1995)

5 n 4     *Channel 4, KGBT v. Briggs*, 759 S.W.2d 939 (Tex. 1988)

18     *City of Brownsville v. Alvarado*, 897 S.W.2d 750 (Tex. 1995)

4, 24     *City of Midland v. O'Bryant*, 18 S.W.3d 209 (Tex. 2000)

23 n 20     *City of New York v. JAM Consultants, Inc.*, 889 F.Supp. 103 (S.D.N.Y.
       1995)

22 n 16     *Clark v. Stipe Law Firm, L.L.P.*, 320 F.Supp.2d 1207 (W.D.Okla. 2004)

24 n 24     *Clayton v. Richards*, 47 S.W.3d 149 (Tex.App. 2001)

18     *Colburn v. Upper Darby Tp.*, 838 F.2d 663 (3rd Cir. 1988), *cert. den.*, 489
       U.S. 1065 (1989)

3 n 1    *Conley v. Gibson*, 355 U.S. 41 (1957)

21 n 14    *Connors v. Lexington Ins. Co.*, 666 F.Supp. 434 (E.D.N.Y. 1987)

24 n 24    *Cornhill Ins. PLC v. Valsamis, Inc.*, 106 F.3d 80, *reh. den.*, 110 F.3d 795 (5th Cir. 1997), *cert. den.*, 522 U.S. 818, *reh. den.*, 522 U.S. 1008 (1997)

4 n 2    *Cortes v. Baltimore Insular Lines*, 287 U.S. 367 (1932)

24 n 25    *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975)

5 n 4    *Cox Texas Newspapers, L.P. v. Wootten*, 59 S.W.3d 717 (Tex.App. 2001)

10    *Cox v. Willis-Knighton Medical Center*, 680 So.2d 1309 (La.App. 1996)

5 n 4    *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814 (Tex. 2005)

21 n 13    *Dakis on Behalf of Dakis Pension Plan v. Chapman*, 574 F.Supp. 757 (N.D.Cal. 1983)

16    *Daniels v. Williams*, 474 U.S. 327 (1986)

22 n 17    *Delgado v. Yandell*, 468 S.W.2d 475 (Tex.Civ.App.), *writ ref'd n.r.e. per curiam*, 471 S.W.2d 569 (Tex. 1971)

13    *Dennis v. Sparks*, 449 U.S. 24 (1980)

24 n 22    *Doe v. Mobile Video Tapes, Inc.*, 43 S.W.3d 40 (Tex.App. 2001)

22 n 16    *Doe v. Roe*, 958 F.2d 763 (7th Cir. 1992)

4 n 2    *Drankwater v. Miller*, 830 F.Supp. 188 (S.D.N.Y. 1993)

18    *Dwares v. City of New York*, 985 F.2d 94 (2nd Cir. 1993)

12    *Easton v. Sundram*, 947 F.2d 1011 (2nd Cir. 1991), *cert. den.*, 504 U.S. 911 (1992)

22 n 17    *Edinburg Hosp. Authority v. Trevino*, 941 S.W.2d 76 (Tex. 1997)

19    *Epstein v. Epstein*, 966 F.Supp. 260 (S.D.N.Y. 1997)

3 n 1    *Erickson v. Pardus*, 127 S.Ct. 2197 (2007)

12    *Escalera v. New York City Housing Authority*, 425 F.2d 853 (2nd Cir. 1970), *cert. den.*, 400 U.S. 853 (1970)

19    *Evans v. City of Marlin*, Tex., 986 F.2d 104 (5th Cir. 1993)

5 n 4    *Evans v. Dolcefino*, 986 S.W.2d 69 (Tex.App. 1999)

19    *Exxon Corp. v. Brecheen*, 526 S.W.2d 519 (Tex. 1975)

21 n 14    *Federal Sav. and Loan Ins. Corp. v. Shearson-American Exp., Inc.*, 658 F.Supp. 1331 (D.Puerto Rico 1987)

23 n 21    *First Union Nat. Bank v. Richmont Capital Partners I*, L.P., 168 S.W.3d 917 (Tex.App. 2005)

18    *Galindo v. Dean*, 69 S.W.3d 623 (Tex.App. 2002)

7 n 6    *Gonzales v. City of Corpus Christi*, 2006 WL 1406852 (S.D.Tex. 2006), *aff'd*, 226 Fed.Appx. 342 (5th Cir. 2007)

22 n 18    *Gotlin v. Lederman*, 367 F.Supp.2d 349 (E.D.N.Y. 2005)

15    *Gouled v. U.S.*, 255 U.S. 298 (1921)

15    *Groh v. Ramirez*, 540 U.S. 551 (2004)

20    *Gruber v. Prudential-Bache Securities, Inc.*, 679 F.Supp. 165 (D.Conn. 1987)

8 n 8, 18    *Hanrahan v. City of Norwich*, 959 F.Supp. 118 (D.Conn.), *aff'd*, 133 F.3d 907 (2nd Cir. 1997)

21 n 13    *Haroco, Inc. v. American Nat. Bank and Trust Co. of Chicago*, 747 F.2d 384 (7th Cir. 1984), *cert. granted*, 469 U.S. 1157, *aff'd*, 473 U.S. 606 (1985)

5 n 4, 6 n 5    *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438 (Tex. 2004)

22 n 19    *Hollander v. Flash Dancers Topless Club*, 173 Fed.Appx. 15 (2nd Cir.), *cert. den.*, 127 S.Ct. 49 (2006)

22 n 18    *Houston Printing Co. v. Dement*, 44 S.W. 558 (Tex.Civ.App. 1898)

5    *Hustler Magazine v. Falwell*, 485 U.S. 46 (1988)

9    *In re Commitment of Field*, 813 N.E.2d 319 (Ill.App. 2004)

9    *In re Commitment of Mullens*, 92 S.W.3d 881 (Tex.App. 2002)

3 n 1    *In re Initial Public Offering Securities Litigation*, 241 F.Supp.2d 281 (S.D.N.Y. 2003)

3 n 1    *Iqbal v. Hasty*, 490 F.3d 143 (2nd Cir. 2007)

4 n 2    *Ivanhoe v. Gaby*, 616 F.Supp. 122 (S.D.Tex. 1985)

10    *Jackson v. State*, 553 So.2d 719 (Fla.App. 1989)

18    *JCW Electronics, Inc. v. Garza*, 176 S.W.3d 618 (Tex.App. 2005)

17    *Jensen v. Conrad*, 747 F.2d 185 (4th Cir. 1984), *cert. den.*, 470 U.S. 1052 (1985)

14    *Johnson v. U.S.*, 333 U.S. 10 (1948)

8 n 8    *Jones v. Maynard*, 1999 WL 191162 (Tex.App. 1999)

2    *Joseph v. Farnsworth Radio & Television Corp.*, 99 F.Supp. 701 (S.D.N.Y. 1951), *aff'd*, 198 F.2d 883 (2nd Cir. 1952)

24 n 25    *Justice v. Belo Broadcasting Corp.*, 472 F.Supp. 145 (N.D.Tex. 1979)

9    *Kansas v. Hendricks*, 521 U.S. 346 (1997)

2    *Karlinsky v. New York Racing Ass'n*, 52 F.R.D. 40 (S.D.N.Y. 1971)

18    *Kassen v. Hatley*, 887 S.W.2d 4 (Tex. 1994)

5 n 4   *Klein & Associates Political Relations v. Port Arthur Independent School
          Dist.*, 92 S.W.3d 889 (Tex.App. 2002)

20 n 12  *Kovian v. Fulton County Nat. Bank and Trust Co.*, 100 F.Supp.2d 129
          (N.D.N.Y. 2000)

5 n 4   *Kroger Texas Ltd. Partnership v. Suberu*, 216 S.W.3d 788 (Tex. 2006)

22 n 19  *Laborers Local 17 Health and Benefit Fund v. Philip Morris, Inc.*, 191 F.3d
          229 (2nd Cir.), *cert. den.*, 528 U.S. 1080 (2000)

23 n 21  *LaChance v. Hollenbeck*, 695 S.W.2d 618 (Tex.App. 1985)

12    *Leatherman v. Tarrant County Narcotics Intelligence and Coordination
          Unit*, 507 U.S. 163 (1993)

22 n 16  *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982)

5    *Lowe v. Hearst Communications, Inc.*, 414 F.Supp.2d 669 (W.D.Tex.
          2006), *aff'd*, 487 F.3d 246 (5th Cir. 2007)

24 n 25  *Lowe v. Hearst Communications, Inc.*, 487 F.3d 246 (5th Cir. 2007)

22 n 17  *Lumberman's Reciprocal Ass'n v. Behnken*, 246 S.W. 72 (Tex. 1922)

14    *Mancusi v. DeForte*, 392 U.S. 364 (1968)

10    *Mann v. Dugger*, 844 F.2d 1446 (11th Cir. 1988), *cert. den.*, 489 U.S. 1071
          (1989)

11    *Matter of Cassidy*, 892 F.2d 637 (7th Cir.), *cert. den.*, 498 U.S. 812 (1990)

8 n 8   ~~*McCullough v. Godwin*, 214 S.W.3d 793 (Tex.App. 2007)~~

14    *McDonald v. U.S.*, 335 U.S. 451 (1948)

20 n 12  *Metro Furniture Rental, Inc. v. Alessi*, 770 F.Supp. 198 (S.D.N.Y. 1991)

24 n 22  *Mineer v. Williams*, 82 F.Supp.2d 702 (E.D.Ky. 2000)

16    *Monroe v. Pape*, 365 U.S. 167 (1961)

24 n 25  *Moore v. Charles B. Pierce Film Enterprises, Inc.*, 589 S.W.2d 489
          (Tex.Civ.App. 1979)

5 n 4, 6 n 5  *Moser v. Roberts*, 185 S.W.3d 912 (Tex.App. 2006)

21 n 15  *Moses v. Martin*, 360 F.Supp.2d 533 (S.D.N.Y. 2004)

8 n 8   *Mroz v. City of Tonawanda*, 999 F.Supp. 436 (W.D.N.Y. 1998)

18    *Mutrux v. Cameron County*, Tex., 809 F.Supp. 510 (S.D.Tex. 1992)

22 n 19  *National Asbestos Workers Medical Fund v. Philip Morris, Inc.*, 74
          F.Supp.2d 221 (E.D.N.Y. 1999)

11    *New Hampshire v. Maine*, 532 U.S. 742 (2001)

5    *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964)

21 n 13    *Northern Trust Bank/O'Hare, N.A. v. Inryco, Inc.*, 615 F.Supp. 828 (N.D.Ill. 1985)

20 n 12    *Parnes v. Heinold Commodities, Inc.*, 548 F.Supp. 20 (N.D.Ill. 1982)

12    *Parratt v. Taylor*, 451 U.S. 527 (1981)

14    *Payton v. New York*, 445 U.S. 573 (1980)

7 n 7    *Pearlstein v. Scudder and German*, 346 F.Supp. 443 (S.D.N.Y. 1972), *reversed on other grounds*, 527 F.2d 1141 (2nd Cir. 1975)

9    *People v. Grassini*, 6 Cal.Rptr.3d 662 (Cal.App. 2003)

9    *People v. Memro*, 700 P.2d 446 (Cal. 1985)

8 n 9    *Perez v. Lopez*, 74 S.W.3d 60 (Tex.App. 2002)

4 n 2    *Planned Parenthood of Columbia/Willamette, Inc. v. American Coalition of Life Activists*, 945 F.Supp. 1355 (D.Or. 1996)

23    *Pope v. Garrett*, 211 S.W.2d 559 (Tex. 1948)

5 n 4    *Provencio v. Paradigm Media, Inc.*, 44 S.W.3d 677 (Tex.App. 2001)

10    *Psychiatric Institute of Washington v. Allen*, 509 A.2d 619 (D.C. 1986)

19 n 10    *R.C.M. Executive Gallery Corp. v. Rols Capital Co.*, 901 F.Supp. 630 (S.D.N.Y. 1995)

5 n 4    *Reeves v. Fox Television Network*, 983 F.Supp. 703 (N.D.Ohio 1997)

22 n 18    *Renfro Drug Co. v. Lawson*, 160 S.W.2d 246 (Tex.Com.App. 1942)

2    *Ricciuti v. N.Y.C. Transit Authority*, 941 F.2d 119 (2nd Cir. 1991)

19 n 10    *Richter v. Sudman*, 634 F.Supp. 234 (S.D.N.Y. 1986)

22 n 18    *Ritzmann v. Weekly World News, Inc.*, 614 F.Supp. 1336 (N.D.Tex. 1985)

9    *Rivera v. State*, 859 So.2d 495 (Fla. 2003)

19 n 10    *Riverwoods Chappaqua Corp. v. Marine Midland Bank*, N.A., 30 F.3d 339 (2nd Cir. 1994)

22 n 17    *Roe v. Wade*, 410 U.S. 113 (1973)

5 n 4    *Rogers v. Dallas Morning News, Inc.*, 889 S.W.2d 467 (Tex.App. 1994)

22 n 18    *Root v. King*, 7 Cow. 613 (N.Y.Sup. 1827)

21 n 13    *Rush v. Oppenheimer & Co., Inc.*, 628 F.Supp. 1188 (S.D.N.Y. 1985)

11    *Russell v. Rolfs*, 893 F.2d 1033 (9th Cir. 1990), *cert. den.*, 501 U.S. 1260 (1991)

5 n 4    *San Antonio Credit Union v. O'Connor*, 115 S.W.3d 82 (Tex.App. 2003)

4    *Sandoval v. Saticoy Lemon Ass'n*, 747 F.Supp. 1373 (C.D.Cal. 1990)

11    *Scarano v. Central R. Co. of N. J.*, 203 F.2d 510 (3rd Cir. 1953)

2   *Scheuer v. Rhodes*, 416 U.S. 232 (1974)

20 n 12   *Schmidt v. Fleet Bank*, 16 F.Supp.2d 340 (S.D.N.Y. 1998)

21 n 14   *Schofield v. First Commodity Corp. of Boston*, 793 F.2d 28 (1st Cir. 1986)

22 n 19   *Schwab v. Philip Morris USA, Inc.*, 449 F.Supp.2d 992 (E.D.N.Y. 2006)

22 n 19   *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479 (1985)

22 n 18   *Shaw v. Rolex Watch U.S.A., Inc.*, 776 F.Supp. 128 (S.D.N.Y. 1991)

8 n 9   *Shell Oil Co. v. Humphrey*, 880 S.W.2d 170 (Tex.App. 1994)

14   *Silverman v. U.S.*, 365 U.S. 505 (1961)

11   *Simon v. Safelite Glass Corp.*, 128 F.3d 68 (2nd Cir. 1997)

7 n 6   *Smith v. Sneed*, 938 S.W.2d 181 (Tex.App. 1997)

21 n 15   *Sound Video Unlimited, Inc. v. Video Shack Inc.*, 700 F.Supp. 127 (S.D.N.Y. 1988)

8 n 9   *Speer v. U.S.*, 512 F.Supp. 670 (N.D.Tex. 1981), *aff'd*, 675 F.2d 100 (5th Cir. 1982)

5 n 4   *Standard Fruit and Vegetable Co., Inc. v. Johnson*, 985 S.W.2d 62 (Tex. 1998)

14   *Stanford v. State of Texas*, 379 U.S. 476, *reh. den.*, 380 U.S. 926 (1965)

24 n 25   *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471 (Tex. 1995)

9   ~~*State v. Alberts*, 861 P.2d 59 (Idaho 1993)~~

10   *State v. Brink*, 500 N.W.2d 799 (Minn.App. 1993)

9   *State v. Hinger*, 600 N.W.2d 542 (S.D. 1999)

9   *State v. Silverman*, 977 P.2d 1186 (Or.App.), *review den.*, 994 P.2d 129 (Or. 1999), *cert. den.*, 531 U.S. 876 (2000)

12   *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002)

17   *Tate v. Canonica*, 5 Cal.Rptr. 28 (Cal.App. 1960)

22 n 18   *Taylor v. Wilson*, 180 S.W.3d 627 (Tex.App. 2005)

22 n 16   *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335 (2nd Cir. 1994)

7 n 6   *Texas Beef Group v. Winfrey*, 11 F.Supp.2d 858 (N.D.Tex. 1998), *aff'd*, 201 F.3d 680, *reh. den.*, 212 F.3d 597 (5th Cir. 2000)

17   *Thurman v. City of Torrington*, 595 F.Supp. 1521 (D.Conn. 1984)

20 n 12   *Tribune Co. v. Purcigliotti*, 869 F.Supp. 1076 (S.D.N.Y. 1994), *aff'd*, 66 F.3d 12 (2nd Cir. 1995)

15   *Twining v. State of N.J.*, 211 U.S. 78 (1908)

5   *Twyman v. Twyman*, 855 S.W.2d 619 (Tex. 1993)

13      *U. S. v. Price*, 383 U.S. 787 (1966)

14      *U.S. v. Lefkowitz*, 285 U.S. 452 (1932)

19 n 10     *U.S. v. Turkette*, 452 U.S. 576 (1981)

14      *U.S. v. Waker*, 463 F.Supp.2d 348 (W.D.N.Y. 2006)

14      *U.S. v. White*, 356 F.3d 865 (8th Cir. 2004)

20 n 12     *USA Certified Merchants, LLC v. Koebel*, 262 F.Supp.2d 319, *recons. den.*, 273 F.Supp.2d 501 (S.D.N.Y. 2003)

24 n 24     *Vaughn v. Drennon*, 202 S.W.3d 308 (Tex.App. 2006)

20 n 12     *Volmar Distributors, Inc. v. New York Post Co., Inc.*, 899 F.Supp. 1187 (S.D.N.Y. 1995)

7 n 6      *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502 (Tex. 2002)

18      *Weyant v. Okst*, 101 F.3d 845 (2nd Cir. 1996)

Statutes

19      18 U.S.C. § 1961(1)(A)

19      18 U.S.C. § 1962(c)

12      42 U.S.C. § 1983

18      Texas Civil Practice & Remedies Code § 93.001(a)(2)

22      Texas Civil Practice and Remedies Code § 73.001

6 n 5      Texas Labor Code § 21.2585

8      Texas Penal Code § 33.021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------------X
PATRICIA CONRADT, Individually, and as Administratrix
of the Estate of LOUIS WILLIAM CONRADT, JR., deceased,          07-CV-06623

                              Plaintiff,

                    –against–

NBC UNIVERSAL, INC.,                              (DC)(GWG)
                        Defendant.
---------------------------------------------------------------------------X

## MEMORANDUM OF LAW IN
## OPPOSITION TO MOTION FOR DISMISSAL OF
## AMENDED COMPLAINT

### PRELIMINARY STATEMENT

Plaintiff Patricia Conradt is the surviving sister of Louis William ("Bill")

Conradt, Jr. Her pleading involves a virus of vigilanteeism and voyeurism that has crossed

species from show business to the business of law enforcement, causing death to her brother.

The defendant and the police have become one and the same. (Complaint at 11.) The virus

is carried by the defendant, transvested as a televiser of truth. (*Id.* at 12.) Patricia sues both

individually and as administratrix of Bill's estate. The defendant contends that she has failed

to assert a claim, in the sense of Rule 12(b) of the Federal Rules of Civil Procedure. The

motion should be denied.

### STATEMENT OF FACTS

On the first weekend in November 2006, the defendant was busy spreading its

virus. Well after midnight that Sunday morning, the defendant importuned the police in

Murphy, Texas, to stage an arrest of Bill Conradt at his home in Terrell for the defendant's

cameras. (Complaint at 28.) After one o'clock in the morning, the police chief agreed. (*Id.*

at 29.) At eleven o'clock, the arrest warrant was signed. (*Id.* at 30.) Later, the search

warrant was signed. (*Id.* at 31.) After noon, the Murphy police notified the Terrell police. (*Id.* at 33.) At about four o'clock, the police knocked on Bill's front door. (Complaint at 35.) They were accompanied by the cameramen of the defendant. (*Id.* at 36.) Soon came the Terrell SWAT team, in order to suit the "thirst for sensationalism of the defendant." (*Id.* at 37.) The party forced open a glass sliding door. (*Id.* at 38.) The police called out 'Search Warrant'. (*Id.* at 40.) An unwitting participant, Bill stepped back into a room and uttered his last words, "I'm not gonna hurt anyone." He picked up his handgun and shot himself. (*Id.* at 41.) A police officer said to a producer, "That'll make good TV." (*Id.* at 42.) A police lieutenant from Murphy responded, "We having fun?"

STANDARD OF REVIEW

In an assault under Rule 12(b), the facts set forth in the complaint must be deemed true, and every inference must be made against the moving party. No complaint will "fall before such an assault unless it appears to a certainty that plaintiffs are entitled to no relief under any state of facts that might be proven in support of their claims." *Joseph v. Farnsworth Radio & Television Corp.*, 99 F.Supp. 701, 704 (S.D.N.Y. 1951), *aff'd*, 198 F.2d 883 (2nd Cir. 1952). The crucial test is whether the complaint gives "fair notice of the claim asserted". *Karlinsky v. New York Racing Ass'n*, 52 F.R.D. 40, 43 (S.D.N.Y. 1971). The issue is not whether Patricia will ultimately prevail but whether she is "entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Patricia is not required to prove her case "at the pleading stage." *Ricciuti v. N.Y.C. Transit Authority*, 941 F.2d 119, 124 (2nd Cir. 1991). The Court will accept "all factual allegations in the complaint as true" and draw "all inferences in the plaintiff's favor." *Bruce v. U.S. Dept. of*

2

*Justice*, 314 F.3d 71, 73-74 (2nd Cir. 2002).[1]

<u>OVERVIEW OF THE CLAIMS</u>

Of the nine causes of action, six are for *personal injury*: injury to the health and person, either of Bill or of Patricia. Of the remaining three, the civil rights claim (42 USC § 1983) is primarily for *deprivation of life*, the RICO claim (18 USC § 1964) is for *injury to property*, and the remaining claim is for *unjust enrichment*.

In the six personal-injury claims, damages are sought for the suffering of emotional distress, for mental anguish and for wrongful penetration of mental tranquility.

| Cause | Capacity | Tort | ¶¶ |
|---|---|---|---|
| 1 | Administr. | Intentional Infliction of Emotional Distress | 67-69 |
| 2 | Administr. | Negligence | 70-74 |
| 7 | Individual | Intentional Infliction of Emotional Distress | 91-93 |
| 8 | Individual | Negligence | 94-98 |
| 5 | Individual | Intentional Intrusion upon the Right to be Left Alone | 83-86 |
| 6 | Individual | Intentional Disclosure of Private Facts | 87-90 |

---

[1]    Often, the twin elements of *notice* and a *set of facts* are stated in one sentence. See, *e.g.*, *In re Initial Public Offering Securities Litigation*, 241 F.Supp.2d 281, 342 (S.D.N.Y. 2003) (that "they lack notice of the … claim, or that there are no set of facts under which plaintiffs could prevail"). In *Conley v. Gibson*, 355 U.S. 41 (1957), the two elements are stated a full page apart. First, a complaint will not be dismissed "unless it appears beyond doubt that the plaintiff can prove *no set of facts* in support of his claim which would entitle him to relief." *Id.* at 45-46 (emphasis added). Then, "all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair *notice* of what the plaintiff's claim is and the grounds upon which it rests." *Id.* at 47 (footnote omitted) (emphasis added). In *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007), the Court took fatal aim at this one-page partition. "Justice Black's opinion for the Court in *Conley v. Gibson* spoke not only of the need for fair notice of the grounds for entitlement to relief but of 'the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* at 1968. The no-set-of-facts observation straddling pages 45 and 46 "fails to mention" the fair-notice passage, and "after puzzling the profession for 50 years, this famous observation has earned its retirement." *Id.* at 1969. *Twombly* put into 'retirement' merely one sentence that too often had been quoted out-of-context but did not eradicate the standard itself. Two weeks later, the Supreme Court cited both *Twombly* and *Conley* for the traditional proposition that "[s]pecific facts are not necessary". *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007). The *Twombly* Court "is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157-158 (2nd Cir. 2007). Under this 'plausibility standard,' it suffices that allegations be "fleshed out" by a "motion for a more definite statement." *Id.* at 158.

*Negligence* here is equivalent to *negligent infliction of emotional distress* in New York. *Brown v. New York City Health and Hospitals Corp.*, 648 N.Y.S.2d 880, 885 (2nd Dept. 1996) (being stuck by a needle). Having previously pled *intentional* infliction of emotional distress, Patricia legitimately is "trying to establish a safety net". *Sandoval v. Saticoy Lemon Ass'n*, 747 F.Supp. 1373, 1395 (C.D.Cal. 1990). *Cain v. Hearst Corp.*, 878 S.W.2d 577, 578 (Tex. 1994).[2]

AS ADMINISTRATRIX,
PATRICIA STATES A CLAIM FOR
INTENTIONAL INFLICTION OF
EMOTIONAL DISTRESS.

As administratrix, Patricia states a claim for intentional infliction of emotional distress ("IIED"). (Complaint at 67-69.) The elements are that "(1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the defendant's actions caused [Bill] emotional distress; and (4) the emotional distress that [Bill] suffered was severe." *City of Midland v. O'Bryant*, 18 S.W.3d 209, 216 (Tex. 2000). The subject extreme and outrageous conduct is that the defendant bribed the city manager and police chief (Complaint at 24-25), badgered the police into getting warrants (*id.* at 28-29), caused the police to conceal the defendant's involvement from the magistrate (*id.* at 31-32) and trespassed onto Bill's property (*id.* at 36). Quite apart from the Fourth Amendment, this

---

[2]    It is common knowledge that "causes of action are not always clearly distinct and separate." *Carrero v. New York City Housing Authority*, 890 F.2d 569, 579 (2nd Cir. 1989). "A double remedy [may have] a rational office". *Cortes v. Baltimore Insular Lines*, 287 U.S. 367, 375 (1932) (Cardozo, J.). The problem is "duplicative awards" not "overlapping causes of action". *Bender v. City of New York*, 78 F.3d 787, 794 (2nd Cir. 1996). *Intentional* and *negligent* infliction of emotional distress may co-exist. See, *e.g.*, *Drankwater v. Miller*, 830 F.Supp. 188 (S.D.N.Y. 1993). Emotional distress may co-exist with invasion of privacy. See, *e.g.*, *Ivanhoe v. Gaby*, 616 F.Supp. 122 (S.D.Tex. 1985). It may co-exist with RICO. See, *e.g.*, *Planned Parenthood of Columbia/Willamette, Inc. v. American Coalition of Life Activists*, 945 F.Supp. 1355 (D.Or. 1996).

tampering with the legal process is "utterly intolerable in a civilized society." *Twyman v. Twyman*, 855 S.W.2d 619, 622 (Tex. 1993). The tampering makes for a difference in kind, not degree, from the defendant's cases.

Only *four* of those cases expired at the pleading stage: *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) (editorial advertisement seeking financial support for right-to-vote movement); *Hustler Magazine v. Falwell*, 485 U.S. 46 (1988) (advertisement parody portraying minister as cohabiting with his mother in an outhouse); *Lowe v. Hearst Communications, Inc.*, 414 F.Supp.2d 669, 676 (W.D.Tex. 2006), *aff'd*, 487 F.3d 246 (5th Cir. 2007) (publication of article concerning attorney's paramours); and *Bittakis v. City of El Paso*, 480 F.Supp.2d 895 (W.D.Tex. 2007) (use of information management system).[3] The remaining *fifteen* cases actually survived beyond the pleading stage.[4]

The defendant's 'gap-filler' argument is confined to post-judgment review of

---

[3]   In *Bittakis*, the Court dismissed the IIED claim "pursuant to the doctrines of governmental immunity and prosecutorial immunity." 480 F.Supp.2d. at 923. The gap-filler issue *infra* was merely something that "the Court alternatively notes". *Id.*

[4]   *Channel 4, KGBT v. Briggs*, 759 S.W.2d 939 (Tex. 1988) (mistaken telecast of candidate's image during news report); *Rogers v. Dallas Morning News, Inc.*, 889 S.W.2d 467 (Tex.App. 1994) (newspaper articles about founder of charity); *Reeves v. Fox Television Network*, 983 F.Supp. 703 (N.D.Ohio 1997) (broadcast of arrest with *no* antecedent involvement); *Standard Fruit and Vegetable Co., Inc. v. Johnson*, 985 S.W.2d 62 (Tex. 1998) (reckless driving); *Evans v. Dolcefino*, 986 S.W.2d 69 (Tex.App. 1999) (news reports on city building department); *Provencio v. Paradigm Media, Inc.*, 44 S.W.3d 677 (Tex.App. 2001) (misleading postcard); *A.H. Belo Corp. v. Corcoran*, 52 S.W.3d 375 (Tex.App. 2001) (failure to notify father of whereabouts of daughter in hiding); *Cox Texas Newspapers, L.P. v. Wootten*, 59 S.W.3d 717 (Tex.App. 2001) (publication of pictures of a dead body); *Klein & Associates Political Relations v. Port Arthur Independent School Dist.*, 92 S.W.3d 889, 898 (Tex.App. 2002) (school district's lawsuit and public comments); *San Antonio Credit Union v. O'Connor*, 115 S.W.3d 82 (Tex.App. 2003) (filing of criminal complaint); *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438 (Tex. 2004) (telling off-color jokes); *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 817 (Tex. 2005) (refusal to give reference letter); *Moser v. Roberts*, 185 S.W.3d 912 (Tex.App. 2006) (accusation against non-custodial parent); *Kroger Texas Ltd. Partnership v. Suberu*, 216 S.W.3d 788 (Tex. 2006) (shoplifting charge); and *Almond v. Tarver*, 468 F.Supp.2d 886 (E.D.Tex. 2006) (altercation in correctional institution).

a jury award that may have been duplicative.[5]

## AS ADMINISTRATRIX, PATRICIA STATES A CLAIM FOR NEGLIGENCE.

As administratrix, Patricia states a claim for negligence, *i.e.*, negligent infliction of emotional distress. (Complaint at 70-74.) In Texas, there is concededly no general duty "not to negligently inflict emotional distress. A claimant may recover mental anguish damages only in connection with defendant's breach of some other legal duty." *Boyles v. Kerr*, 855 S.W.2d 593, 594 (Tex. 1993). In the instant case, the 'other legal duty' is a duty "not to push law enforcement agencies to do what they otherwise would not do". (Complaint at 71 and 95.) It was breached by such means as "badgering the Murphy police after midnight". (*Id.* at 72 and 96.)

Only *one* of the defendant's cases expired at the pleading stage: *Campbell v. City of San Antonio*, 43 F.3d 973 (5th Cir. 1995). A detective had identified the plaintiff in a photographic lineup. After the charges were dismissed, she sued for 'negligent misidentification' but failed to allege "malice, ill will, or improper purpose" merely an honest mistake. *Id.* at 981. In the instant case, the pushing was done with malice. (Complaint at 9.) Malice includes "such gross indifference to the right of others as will amount to a willful or wanton act." *Bradstreet Co. v. Gill*, 9 S.W. 753, 757 (Tex. 1888). The

---

5    Concededly, in *Hoffmann-La Roche, supra,* the Court held that IIED "should not be extended to thwart legislative limitations on statutory claims for mental anguish and punitive damages." 144 S.W.3d at 447. The Court was referring to Texas Labor Code § 21.2585. With respect to the instant IIED claim, no such limitation applies. Concededly, in *Moser, supra,* the Court reasoned that, because the plaintiff's claims for slander, libel, and malicious prosecution afforded "a remedy for any resulting emotional distress, there was no gap left to fill with an IIED cause of action." 185 S.W.3d at 916. This was said merely in the context of a jury award of $193,000 for libel, $340,000 for IIED, and $30,000 for malicious prosecution. *Id.* at 914. In the instant case, too, any such considerations should await the judgment stage.

6

remaining *five* cases actually survived beyond the pleading stage.[6]

## THE SUICIDE WAS FORESEEABLE.

It was reasonably foreseeable that Bill's "emotional state might be frail in general, and that he might have a tendency to suicide in particular." (Complaint at 62.)[7] The defendant arranged for the issuance of the made-for-television arrest and search warrants; in so doing, the defendant avowed that it believed Bill to be a pedophile; a pedophile lacks self-esteem; so does a person who commits suicide. For the purposes of a motion under Rule 12(b)(6), the defendant should be judicially estopped from taking a contrary position: that it was *not* aware of Bill's low self-esteem. Being aware of this low self-esteem, the defendant could, and should, have foreseen his suicide.

*None* of the defendant's seven suicide cases expired at the pleading stage. There appears to be only one reported Texas suicide case that ever was dismissed on the pleadings: *Archibeque v. North Texas State Hospital-Wichita Falls Campus*, 115 S.W.3d 154 (Tex.App. 2003). The basis was merely lack of subject matter jurisdiction, in that the "Tort Claims Act provides a limited waiver of sovereign immunity, allowing suits to be brought

---

6    *Bird v. W.C.W.*, 868 S.W.2d 767 (Tex. 1994) (no liability to father for non-malicious misdiagnosis of his sexual abuse); *Smith v. Sneed*, 938 S.W.2d 181 (Tex.App. 1997) (no liability to patient for physician's non-malicious failure to verify his prescription records when requested to do so by pharmacist); *Texas Beef Group v. Winfrey*, 11 F.Supp.2d 858 (N.D.Tex. 1998), *aff'd*, 201 F.3d 680, *reh. den.*, 212 F.3d 597 (5th Cir. 2000) (failure to prove that comments about danger of contracting mad cow disease were 'of and concerning' plaintiff); *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502 (Tex. 2002) (failure to prove that store knowingly provide false information to instigate arrest); and *Gonzales v. City of Corpus Christi*, 2006 WL 1406852 (S.D.Tex. 2006), *aff'd*, 226 Fed.Appx. 342 (5th Cir. 2007) (failure to prove that store called the police for 'no reason').

7    "A tortfeasor must accept an injured party, ill and emotionally upset to the point of requiring professional counseling, as he finds him, even with a 'thin skull'." *Pearlstein v. Scudder and German*, 346 F.Supp. 443, 452 (S.D.N.Y. 1972), *reversed on other grounds*, 527 F.2d 1141 (2nd Cir. 1975).

against governmental agencies only in certain narrowly-defined circumstances." *Id.* at 157. *Four* of the defendant's cases survived to the summary judgment stage.[8]   The defendant's remaining *three* suicide cases survived to trial.[9]

On November 5, 2006, well after midnight, the defendant's employee Hansen telephoned the Murphy police.   (Complaint at 28.)   Hansen informed them that Bill had "contacted a decoy online but never arrived" and "insisted upon the issuance of arrest and search warrants".   (*Id.*)   The chief assigned this task to one 'Gator'.   (*Id.* at 29.)   First, Gator finished the made-for-television arrest warrant.   (*Id.* at 30.)   What appears to be the arrest warrant, with supporting affidavit, is submitted herewith as Exhibit A.   According to this document, Bill had engaged in a felony defined in section 33.021 of the Texas Penal Code: online solicitation of a minor.

The arrest warrant appears to have been signed at eleven in the morning. According to the affidavit, fifteen days earlier, on October 21, Bill had transmitted "sexually explicit photographs".   The day before, on November 4, he allegedly had transmitted the words "my name is Will" and said over the telephone "did you walk the dogs?" This was the worst language that Gator did quote: apparently, the worst that the defendant had supplied.

---

8    In *Hanrahan v. City of Norwich*, 959 F.Supp. 118 (D.Conn.), *aff'd*, 133 F.3d 907 (2nd Cir. 1997), there was no evidence that the detainee had "exhibited any signs or symptoms of emotional disturbance". *Id.* at 122. In the instant case, the defendant itself distributed purported evidence of emotional disturbance. In *Mroz v. City of Tonawanda*, 999 F.Supp. 436 (W.D.N.Y. 1998), there was no evidence that a call to the defendant preceded the suicide. *Id.* at 460. In the instant case, there is no serious dispute that the defendant was omnipresent. *McCullough v. Godwin*, 214 S.W.3d 793 (Tex.App. 2007), did not involve suicide. In *Jones v. Maynard*, 1999 WL 191162 (Tex.App. 1999), the opinion begins with the notice, "NOT DESIGNATED FOR PUBLICATION.   UNDER TX R RAP RULE 47.7, UNPUBLISHED OPINIONS HAVE NO PRECEDENTIAL VALUE BUT MAY BE CITED WITH THE NOTATION '(not designated for publication).'" The defendant ignores this notice.

9    *Speer v. U.S.*, 512 F.Supp. 670 (N.D.Tex. 1981), *aff'd*, 675 F.2d 100 (5th Cir. 1982); *Shell Oil Co. v. Humphrey*, 880 S.W.2d 170 (Tex.App. 1994); *Perez v. Lopez*, 74 S.W.3d 60 (Tex.App. 2002).

Gator's next project was the made-for-television search warrant. (Complaint at 31). What appears to be the search warrant, with supporting affidavit, is submitted herewith as Exhibit B. The search warrant appears to have been signed shortly after two o'clock in the afternoon. By means of the supporting affidavits, the defendant had sworn to the local judiciary that Bill was a pedophile. The defendant had avowed that it believed Bill to be "suffering from pedophilia, a condition the psychiatric profession itself classifies as a serious mental disorder." *Kansas v. Hendricks*, 521 U.S. 346, 360 (1997). The "psychiatric profession considers pedophilia a serious mental disorder." *In re Commitment of Mullens*, 92 S.W.3d 881, 885 (Tex.App. 2002).

A pedophile tends to lack "self-confidence". *People v. Grassini*, 6 Cal.Rptr.3d 662, 668 (Cal.App. 2003). He or she is likely to have "low self-esteem". *In re Commitment of Field*, 813 N.E.2d 319, 324 (Ill.App. 2004). A pedophile's "sense of self" is "very unstable". *State v. Hinger*, 600 N.W.2d 542, 546 (S.D. 1999). He or she has an "abysmally low self image and problems with terrible insecurity and feelings of rejection." *People v. Memro*, 700 P.2d 446, 470 (Cal. 1985). To quote one, "It's obvious and it's common with a pedophile that I have an extremely low self-image." *State v. Alberts*, 861 P.2d 59, 64 (Idaho 1993).

By means of the affidavits, the defendant was asserting that it believed Bill to be self-destructive. A pedophile is prone to "engage in self-damaging acts". *Rivera v. State*, 859 So.2d 495, 501 n 2 (Fla. 2003). He or she "has feelings of self-destruction". *Burchett v. State Dept. of Corrections*, 564 P.2d 87, 89 (Ariz.App. 1977). A pedophile is "suicidal and self-destructive." *State v. Silverman*, 977 P.2d 1186, 1189 (Or.App.), *review den.*, 994 P.2d

129 (Or. 1999), *cert. den.*, 531 U.S. 876 (2000). He or she is "self-destructive". *Mann v. Dugger*, 844 F.2d 1446, 1460 (11th Cir. 1988), *cert. den.*, 489 U.S. 1071 (1989) (crime committed as petitioner was going home to commit suicide).

By definition, a person who commits suicide is self-destructive. Most likely, he or she is suffering from "low self-esteem". *State v. Brink*, 500 N.W.2d 799, 806 (Minn.App. 1993); *Cox v. Willis-Knighton Medical Center*, 680 So.2d 1309, 1311 (La.App. 1996). A person with suicidal tendencies is likely to suffer from "feelings of shame and low self-esteem". *Carlisle v. Frisbie Memorial Hosp.*, 888 A.2d 405, 421 (N.H. 2005). In *Psychiatric Institute of Washington v. Allen*, 509 A.2d 619 (D.C. 1986), the tests showed "poor self-esteem". *Id.* at 621. A "nurse found Daniel in a compromising sexual situation with another patient. While the nurse and Daniel were discussing the incident, Daniel 'expressed wishes that he were dead'". *Id.*

~~In *Jackson v. State*, 553 So.2d 719 (Fla.App. 1989), the Court affirmed a~~ mother's conviction for causing the suicide death of seventeen-year-old Tina by requiring her to work as a strip dancer to earn money. The "critical element" was Tina's "self-worth." *Id.* at 721. Suppose that the defendant had brought a crew of cameramen to Tina's doorstep and asked the police to come, too. Soon ratings shot up as millions of viewers heard the 'pop' of a handgun. At the pleading stage, the defendant would be within the chain of causation..

The defendant should be judicially estopped from denying that Bill faced a "special danger". *Barbera v. Smith*, 654 F.Supp. 386, 392 (S.D.N.Y. 1987). "The doctrine of judicial estoppel 'prevents a party from asserting a factual position in a legal proceeding that is contrary to a position previously taken by him in a prior legal proceeding.'" *Bridgeway Corp. v. Citibank*, 45 F.Supp.2d 276, 283 (S.D.N.Y. 1999) (Chin, J.), *aff'd*, 201

10

F.3d 134 (2nd Cir. 2000). In that case, judicial estoppel was *not* available, because the "Liberian Judgment was rendered by a system that does not provide impartial tribunals or procedures compatible with the requirements of due process." 45 F.Supp.2d at 288. In the instant case, the Court should keep Texas from becoming Liberia.

At the time Bill died, the defendant was asserting *inter alia* that it believed him to be someone who would possess low self-esteem. Now the defendant says that it could *not* foresee that Bill would resemble a person with low self-esteem. "Such use of inconsistent positions would most flagrantly exemplify that playing 'fast and loose with the courts' which has been emphasized as an evil the courts should not tolerate." *Scarano v. Central R. Co. of N. J.*, 203 F.2d 510, 513 (3rd Cir. 1953). In Texas, the defendant "successfully asserted a legal position respecting [its belief about Bill's self-esteem] that is completely at odds with the position now asserted." *Allen v. Zurich Ins. Co.*, 667 F.2d 1162, ~~1167 (4th Cir. 1982). In denying that suicide was foreseeable, the defendant "is trying to~~ whipsaw this court." *Matter of Cassidy*, 892 F.2d 637, 641 (7th Cir.), *cert. den.*, 498 U.S. 812 (1990). For the limited purposes of this motion under Rule 12(b)(6), this Court should not allow the defendant to change its position regarding awareness of low self-esteem to one presently more "expedient". 892 F.2d at 642. "Each court, state and federal, is entitled to have whatever rules of judicial estoppel it considers necessary to protect its dignity and it system of justice." *Russell v. Rolfs*, 893 F.2d 1033, 1038 (9th Cir. 1990), *cert. den.*, 501 U.S. 1260 (1991). Judicial estoppel is a matter of "integrity". *Simon v. Safelite Glass Corp.*, 128 F.3d 68, 74 (2nd Cir. 1997). A court cannot allow the defendant's inconsistency "without undermining the integrity of the judicial process." *New Hampshire v. Maine*, 532 U.S. 742, 755 (2001).

AS ADMINISTRATRIX,
PATRICIA STATES A CLAIM
PURSUANT TO THE CIVIL RIGHTS ACT.

Patricia duly states a claim as administratrix pursuant to the federal Civil
Rights Act, 42 U.S.C. § 1983. Dismissal is disfavored "especially under the Civil Rights
Act". *Escalera v. New York City Housing Authority*, 425 F.2d 853, 857 (2nd Cir. 1970), *cert.
den.*, 400 U.S. 853 (1970). The principle in *Conley* against dismissal is to be applied with
"particular strictness when the plaintiff complains of a civil rights violation". *Branum v.
Clark*, 927 F.2d 698, 705 (2nd Cir. 1991). The caution in *Conley* applies with "even greater
force ... where the plaintiff complains of a civil rights violation". *Easton v. Sundram*, 947
F.2d 1011, 1015 (2nd Cir. 1991), *cert. den.*, 504 U.S. 911 (1992). When providing for
greater particularity, Federal Rule of Civil Procedure 9(b) does not include actions under
section 1983. "*Expressio unius est exclusio alterius.*" *Leatherman v. Tarrant County
Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993). The complaint in a
civil rights case need "satisfy only the simple requirements of Rule 8(a)." *Swierkiewicz v.
Sorema N. A.*, 534 U.S. 506, 513 (2002).

The two "essential elements" to an action under section 1983 are "(1) whether
the conduct complained of was committed by a person acting under color of state law; and
(2) whether this conduct deprived a person of rights, privileges, or immunities secured by the
Constitution or laws of the United States." *Parratt v. Taylor*, 451 U.S. 527, 535 (1981).
Patricia duly alleges that the defendant committed an intrusion under color of the law of
Texas that deprived Bill of his rights. Bill was "deprived of his life, liberty and property
under color of the State of Texas without due process of law." (Complaint at 76.)

*Camarano v. City of New York*, 624 F.Supp. 1144 (S.D.N.Y. 1986) is readily

12

distinguishable.   The Court merely held that an "allegation of a single instance of mistreatment by a police officer, a three-day confinement, is insufficient to establish an unconstitutional municipal policy attributed to a municipal policymaker." *Id.* at 1146. *Brock v. Wright*, 315 F.3d 158 (2nd Cir. 2003) survived well beyond the pleading stage. Then there was "no evidence that could lead one to suspect that [defendant] understood that an outside [dermatological] consultation would be necessary or even useful." *Id.* at 164.

The defendant was a dominant participant in
joint action with the police.

The defendant was "acting under color of state law". *Dennis v. Sparks*, 449 U.S. 24, 28 (1980) (bribery of judge). "To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents." *U. S. v. Price*, 383 U.S. 787, 794 (1966). The defendant was more than a *willful* participant: it was the *dominant* participant. The defendant bribed city manager Sherwood and police chief Myrick. (Complaint at 24-25.)  Trumping *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152 (1970), the defendant's host Hansen "reached an understanding" with the Murphy police. A case well in point is *Berger v. Hanlon*, 129 F.3d 505 (9th Cir. 1997), *cert. den.*, 525 U.S. 961, *cert. granted*, 525 U.S. 981 (1998), *judgment vacated*, 526 U.S. 808, *opinion reinstated*, 188 F.3d 1155, *cert. den.*, 526 U.S. 1154 (1999). As here, a broadcaster was liable under section 1983.  Government officers had "planned and executed the search in a manner designed to enhance its entertainment, rather than its law enforcement value". *Id.* at 515.  "This satisfies the joint action test." *Id.*

The Fourth Amendment secures against an
unreasonable search.

In violation of the Fourth Amendment, the defendant caused the police of

Murphy to place "the liberty of every man in the hands of every petty officer." *Stanford v. State of Texas*, 379 U.S. 476, 481, *reh. den.*, 380 U.S. 926 (1965). The defendant caused them to encroach upon his "castle." *Silverman v. U.S.*, 365 U.S. 505, 511 n 4 (1961). A SWAT team trampled upon the "firm line at the entrance to the house." *Payton v. New York*, 445 U.S. 573, 590 (1980) (reversing convictions).

The defendant caused concealment of its role from the judge who issued the search warrant, and he would not have signed, had he been so informed. (Complaint at 31-32.) He was unable to make an "informed and deliberate" determination. *U.S. v. Lefkowitz*, 285 U.S. 452, 464 (1932). The matter should fully have been "decided by a judicial officer, not by a policeman or Government enforcement agent." *Johnson v. U.S.*, 333 U.S. 10, 14 (1948). The "Constitution requires a magistrate to pass on the desires of the police before they violate the privacy of the home." *McDonald v. U.S.*, 335 U.S. 451, 456 (1948). The facts must be judged "by a neutral and detached magistrate". *Mancusi v. DeForte*, 392 U.S. 364, 371 (1968). Determinations "regarding the necessity, location, scope, and conditions of such incursions are ... to be made by disinterested judicial officers, and not by the officers conducting the searches". *Ayeni v. Mottola*, 35 F.3d 680, 685 (2nd Cir. 1994), *cert. den.*, 514 U.S. 1062 (1995).

The defendant's clerical-error cases are readily distinguishable. In *U.S. v. White*, 356 F.3d 865 (8th Cir. 2004), a warrant was dated the *13*th instead of the *26*th. In *U.S. v. Waker*, 463 F.Supp.2d 348 (W.D.N.Y. 2006), the *25*th instead of the *26*th. In the instant case, wrong dates are the least of the problem. The damning defect is that the search warrant was strictly *made-for-television*: none of the Murphy-sting arrests was deemed worth of prosecution, and Bill's death warrant never would have been signed had the defendant's

14

involvement been revealed. Only to underscore this, the Complaint speaks of wrong "county and month". (Complaint at 32.) Warrants, SWAT and invasion all occurred outside "settled usages and modes of proceedings". *Twining v. State of N.J.*, 211 U.S. 78, 100 (1908).

The entry into Bill's home was without a<br>valid warrant, and thus warrantless.

To render a search constitutional, the search warrant must be *valid*. "Searches and seizures are as constitutional under the [Fourth Amendment] when made under *valid* search warrants as they are unconstitutional, because unreasonable, when made without them". *Gouled v. U.S.*, 255 U.S. 298, 308 (1921) (emphasis added). A "search of private property without proper consent is 'unreasonable' unless it has been authorized by a *valid* search warrant". *Camara v. Municipal Court of City and County of San Francisco*, 387 U.S. 523, 528-529 (1967) (emphasis added). Unless the warrant is valid, the search is deemed "warrantless". *Id.* at 529. In *Groh v. Ramirez*, 540 U.S. 551 (2004), the Supreme Court held that a search warrant was "plainly invalid". *Id.* at 557. The Court then rejected a contention that the search nevertheless was "functionally equivalent" to a search authorized by a valid warrant. *Id.* at 558. The warrant was "so obviously deficient that we must regard the search as 'warrantless'". *Id.* at 558.

The defendant engaged in false arrest.

In making the warrantless entry, the defendant engaged in false arrest. "False arrest or imprisonment occurs when a person is arrested or imprisoned without any legal process or warrant, or pursuant to a warrant that is either null and void on its face or maliciously and wrongfully obtained." *Brewer v. Blackwell*, 692 F.2d 387, 400 (5th Cir. 1982). Whether or not the nullity of the instant warrant was apparent on its face, surely the

warrant was wrongfully obtained. Strikingly on point is *Burke v. New York, New Haven & Hartford Railroad Co.*, 267 F.2d 894 (2nd Cir. 1959). The "defendant's servants did ... more than supply information upon which a warrant of arrest [was] issued in an invalid form." *Id.* at 899. The defendant's employees were "active participants at every phase of the entire proceeding." *Id.* at 900.

Section 1983 provides a remedy for a
violation of the Due Process Clause.

Section 1983 "came onto the books as § 1 of the Ku Klux Act of April 20, 1871. 17 Stat. 13. It was one of the means whereby Congress exercised the power vested in it by § 5 of the Fourteenth Amendment to enforce the provisions of that Amendment." *Monroe v. Pape*, 365 U.S. 167, 171 (1961). The Fourteenth Amendment disallows the state from depriving Bill Conradt of "life, liberty, or property, without due process of law" – even where cameras and klieg lights replace burning crosses and hoods. In *Monroe*, "13 Chicago police officers broke into petitioners' home in the early morning, routed them from bed, made them stand naked in the living room, and ransacked every room". 365 U.S. at 169. Surely, if Monroe had suffered from low self-esteem and committed suicide – a jury could have called this *foreseeable*.

Bill's demise was well within the river of
causation.

The defendant acted intentionally. Like most of Patricia's claims, a claim under the Civil Rights Act patently involves *intentional* misconduct. Fourteenth Amendment deprivation means far more than "mere lack of due care". *Daniels v. Williams*, 474 U.S. 327, 330 (1986). Intentional misconduct causes the river of proximate causation to flow in a much wider channel. The "law of proximate cause has drawn a sharp distinction between

16

acts which are deliberate and intentional from those which involve mere negligence." *Blue Cross and Blue Shield of New Jersey, Inc. v. Philip Morris, Inc.*, 36 F.Supp.2d 560, 580 (E.D.N.Y. 1999). Many of the "limitations upon liability that are subsumed under the doctrine of 'proximate cause,' as usually expounded in negligence cases do not apply to intentional torts." *Tate v. Canonica*, 5 Cal.Rptr. 28, 33 (Cal.App. 1960).

The defendant owed a 'special duty' to Bill. The duty arouse from a special relationship akin to that between a prison official and an inmate. (Complaint at 62-63.) If the defendant "puts a man in a position of danger ... and then fails to protect him, it will not be heard to say that its role was merely passive; it is as much an active tortfeasor as if it had thrown him into a snake pit." *Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir. 1982). Whenever a person is about to injure himself, it is a peace officer's "duty to prevent it". Article 6.06 of the Texas Code of Criminal Procedure. Section 1983 applies to "omission to perform required acts pursuant to the police officer's duty to protect." *Thurman v. City of Torrington*, 595 F.Supp. 1521, 1527 (D.Conn. 1984).

In *Jensen v. Conrad*, 747 F.2d 185 (4th Cir. 1984), *cert. den.*, 470 U.S. 1052 (1985), the Court listed three "factors that should be included in a 'special relationship' analysis." *Id.* at 194 n 11. The *Jensen* factors are (1) whether Bill was in "custody" at the time of the incident, (2) whether the State had "expressly stated its desire to provide affirmative protection" and (3) whether the defendant "knew" of Bill's plight. *Id.* Each of the *Jensen* factors applies resoundingly to the instant case. *First* – per *Burke v. New York, New Haven & Hartford Railroad Co.*, *supra*, and the cases cited therewith – Bill was under false arrest and in a state of unlawful imprisonment. That the custody was false and unlawful can only heighten its significance: not merely did the defendant fail to prevent a suicide, the

17

defendant unlawfully had "assisted in creating or increasing the danger". *Dwares v. City of New York*, 985 F.2d 94, 99 (2nd Cir. 1993). *Second*, in Article 6.06 *supra* of the Code of Criminal Procedure, the State of Texas has expressly mandated that, whenever a person is about to injure himself, it is a police officer's "duty to prevent it". *Third*, per the discussion *supra*, having avowed that Bill was pedophile, the defendant now is estopped from denying that it knew that he would react in the manner of someone with low self-esteem.

The suicide of a detainee can "give rise to a section 1983 violation." *Colburn v. Upper Darby Tp.*, 838 F.2d 663, 667 (3rd Cir. 1988), *cert. den.*, 489 U.S. 1065 (1989). Bill's home had become a place of involuntary confinement. The defendant is estopped to deny that he was vulnerable to low self-esteem. The defendant had an "obligation not to act with reckless indifference to that vulnerability." *Id.* at 669. The defendant indeed acted with "deliberate indifference". *Weyant v. Okst*, 101 F.3d 845, 856 (2nd Cir. 1996). A "person in state custody has a right [to] protection against suicide." *Hanrahan v. City of Norwich, supra,* 959 F.Supp. at 122.

At the pleading stage, the suicide was well within the chain of causation. If a "suicide or attempted suicide was caused in whole or in part by a failure on the part of any defendant to comply with an applicable legal standard, then such suicide or attempted suicide shall not be a defense." Texas Civil Practice and Remedies Code § 93.001(a)(2). This language has been quoted in only five reported cases, all of them surviving at least to summary judgment: *Mutrux v. Cameron County, Tex.*, 809 F.Supp. 510 (S.D.Tex. 1992); *Kassen v. Hatley*, 887 S.W.2d 4 (Tex. 1994); *City of Brownsville v. Alvarado*, 897 S.W.2d 750 (Tex. 1995); *Galindo v. Dean*, 69 S.W.3d 623 (Tex.App. 2002); and *JCW Electronics, Inc. v. Garza*, 176 S.W.3d 618 (Tex.App. 2005). The language of section 93.001 explicitly

18

rejects any rule that "absolves a tortfeasor of liability when the injured party takes their own life." *Evans v. City of Marlin, Tex.*, 986 F.2d 104, 109 n 8 (5th Cir. 1993) (summary judgment). Bill "may know that he is destroying himself while at the same time he is unable to control his physical acts. The suicide should not bar a claim notwithstanding it can be said that he knew the nature and consequences of his physical acts." *Exxon Corp. v. Brecheen*, 526 S.W.2d 519, 524 (Tex. 1975).

## AS ADMINISTRATRIX, PATRICIA STATES A CLAIM PURSUANT TO RICO.

As Administratrix, Patricia sets forth a cause of action for violation of RICO, 18 U.S.C. § 1962(c). (Complaint at 77-82.) A RICO claim survives the demise of the victim. *Epstein v. Epstein*, 966 F.Supp. 260, 263 (S.D.N.Y. 1997). Patricia contends that the defendant's conduct is in violation of 18 U.S.C. § 1962(c). The requisite RICO enterprise is ~~the 'Catch-a-Predator' finger of the 'Dateline' hand of the television-production-arm-of-the~~ defendant. (Complaint at 60 and 79.) The racketeering activity is state-law felony bribery, per 18 U.S.C. § 1961(1)(A). (*Id.* at 60.) The persons committing the predicate acts are host Chris Hansen, producer Lynn Keller, senior producer Allan Maraynes, executive producer David Corvo and attorney Craig Bloom and also the members of 'Perverted-Justice'. (*Id.* at 11 and 60.) 'Predator' is the enterprise. Hansen and his associates are the racketeers.[10] The

---

10    These employees and the other named natural persons are distinct and separate from the defendant itself, a "legally different entity with different rights and responsibilities due to its different legal status." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001). Moreover, Predator is an entity "separate and apart" from the pattern of bribery in which it engages. *U.S. v. Turkette*, 452 U.S. 576, 577 (1981). (Complaint at 18, 24-25 and 52-59.) In *Bennett v. U.S. Trust Co. of New York*, 770 F.2d 308 (2nd Cir. 1985), *cert. den.*, 474 U.S. 1058 (1986), the complaint failed to name any person who had conducted the affairs of the defendant in the proscribed manner. 770 F.2d at 315 n 2. The Court had no choice but to interpret the complaint as naming the defendant as both the person and the enterprise. *Id.* So too, in *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339 (2nd Cir. 1994), the plaintiff

defendant is vicariously liable. (*Id.* at 8 and 10.)

Together with the Complaint, Patricia filed a standard-form RICO Case Statement. She explicitly points to *Amendolare v. Schenkers Intern. Forwarders, Inc.*, 747 F.Supp. 162 (E.D.N.Y. 1990), as a vicarious liability 'hub' case.[11] Such liability follows from "general principles of agency". *Bernstein v. IDT Corp.*, 582 F.Supp. 1079, 1084 (D.Del. 1984).[12] Patricia duly alleges that the officers and directors of the defendant "had knowledge of, [and were] recklessly indifferent toward, the unlawful activity." *Gruber v. Prudential-Bache Securities, Inc.*, 679 F.Supp. 165, 181 (D.Conn. 1987). (Complaint at 61.) The named participants have acted "with the full knowledge, acquiescence and encouragement of the defendant, for its benefit and on its behalf." (*Id.*) "Where the employer allegedly benefits from the predicate acts, respondeat superior liability under RICO is appropriate." *Center*

---

failed to raise the theory of vicarious liability, and so the Court had no occasion to consider it. This was likewise the case in *R.C.M. Executive Gallery Corp. v. Rols Capital Co.*, 901 F.Supp. 630 (S.D.N.Y. 1995). In *Richter v. Sudman*, 634 F.Supp. 234 (S.D.N.Y. 1986), the complaint explicitly named the defendant as both. *Id.* at 240.

11    In *Amendolare*, a theory of vicarious liability for RICO bribery survived summary judgment. As much as any case, *Amendolare* may fairly be said to discuss all the major cases before and be discussed in all the major Second Circuit cases thereafter. These cases well address the distinction between enterprise and culpable party. The defendant distorts this distinction and ignores the theory of vicarious liability.

12    *Parnes v. Heinold Commodities, Inc.*, 548 F.Supp. 20 (N.D.Ill. 1982) is readily distinguishable. The Court merely declined to "to permit suit against the 'enterprise' that had itself been infiltrated by the 'unlawful' conduct or participation of the 'person' – the 'enterprise' that may itself be a victim of the racketeering activity." *Id.* at 23-24. Similarly, in *Metro Furniture Rental, Inc. v. Alessi*, 770 F.Supp. 198 (S.D.N.Y. 1991), the defendant did not know and was not involved, and did not and could not have benefited. *Id.* at 202. Likewise, in *Schmidt v. Fleet Bank*, 16 F.Supp.2d 340 (S.D.N.Y. 1998), the allegations failed to "suggest knowledge of, or reckless indifference towards, [the] unlawful activity at a sufficiently high corporate level." *Id.* at 352. Likewise, in *Volmar Distributors, Inc. v. New York Post Co., Inc.*, 899 F.Supp. 1187 (S.D.N.Y. 1995), the defendant had not benefited. *Id.* at 1193. So too, in *Tribune Co. v. Purcigliotti*, 869 F.Supp. 1076 (S.D.N.Y. 1994), *aff'd*, 66 F.3d 12 (2nd Cir. 1995), the participants were not acting "within the scope" of their employment or authority. *Id.* at 1089. So too, in *Kovian v. Fulton County Nat. Bank and Trust Co.*, 100 F.Supp.2d 129 (N.D.N.Y. 2000), the participants were "acting outside the scope of their employment". *Id.* at 133. *USA Certified Merchants, LLC v. Koebel*, 262 F.Supp.2d 319, *recons. den.*, 273 F.Supp.2d 501 (S.D.N.Y. 2003), was to the same effect, upon summary judgment.

*Cadillac, Inc. v. Bank Leumi Trust Co. of New York*, 808 F.Supp. 213, 236 (S.D.N.Y. 1992),

*aff'd*, 99 F.3d 401 (2nd Cir. 1995).[13]  Accord, *Burke v. Dowling*, 944 F.Supp. 1036, 1070

(E.D.N.Y. 1995).[14]    There is no question that Hansen, Keller, Maraynes, Corvo and Bloom

acted with and for full corporate blessing and benefit.[15]

       The injury to Bill's 'memory' is injury to property.  Under the law of Texas,

Bill's estate possesses an item of property called his *memory*: how Bill is remembered.

(Complaint at 47 and 82.)  Whether something amounts to RICO property is a question of state

---

13    In *Northern Trust Bank/O'Hare, N.A. v. Inryco, Inc.*, 615 F.Supp. 828 (N.D.Ill. 1985), vicarious liability was denied merely because the corporate defendant itself was actually "the principal victim". *Id.* at 835. Similarly, in *Dakis on Behalf of Dakis Pension Plan v. Chapman*, 574 F.Supp. 757 (N.D.Cal. 1983), the defendant itself was a victim. *Id.* at 760. Likewise, in *Rush v. Oppenheimer & Co., Inc.*, 628 F.Supp. 1188 (S.D.N.Y. 1985), the defendant itself was a victim. *Id.* at 1195. So too, in *Haroco, Inc. v. American Nat. Bank and Trust Co. of Chicago*, 747 F.2d 384 (7th Cir. 1984), *cert. granted*, 469 U.S. 1157, *aff'd*, 473 U.S. 606 (1985), the defendant itself was "the victim, prize, or passive instrument of racketeering." 747 F.2d at 402. The instant case is otherwise: herein, the defendant was "actually the direct or indirect beneficiary". *Id.*

14    As for *Schofield v. First Commodity Corp. of Boston*, 793 F.2d 28 (1st Cir. 1986), Judge Sand in this court has supplied a cogent critique. "We acknowledge that some courts have held that vicarious liability is inconsistent with the language of § 1962(c), which supposedly is phrased in a way as to limit rather than expand the range of potential violators. But we find § 1962(c)'s language to be neither expansive nor restrictive, just particular; as we have seen, the provision's prohibition consists of several distinct elements. The mere fact that § 1962(c) does not by itself deal with all possible wrongdoing under RICO, but leaves some work for other provisions, such as § 1962(a), does not mean that it is narrow in scope, or that it must be read as implicitly rejecting the idea of vicarious liability." *131 Main Street Associates v. Manko*, 897 F.Supp. 1507, 1534 (S.D.N.Y. 1995) (citations omitted). So has Judge Glasser in the Eastern District. "With respect to the issue of respondeat superior liability in the RICO context, the Court is persuaded that such liability in this factual setting is appropriate, notwithstanding the split of authority on the subject. *** This Court is not persuaded by the reasoning of those courts reaching a contrary result, see, *e.g.*, *Schofield*". *Connors v. Lexington Ins. Co.*, 666 F.Supp. 434, 453 (E.D.N.Y. 1987). The "trend of the law in this area generally holds that normal doctrines of corporate liability, such as vicarious liability, apply under RICO." *Federal Sav. and Loan Ins. Corp. v. Shearson-American Exp., Inc.*, 658 F.Supp. 1331, 1341-1342 (D.Puerto Rico 1987). "[W]e do not view the First Circuit's holding in *Schofield* as altering the foregoing analysis." *Id.* at 1342.

15    As for *Sound Video Unlimited, Inc. v. Video Shack Inc.*, 700 F.Supp. 127 (S.D.N.Y. 1988), the case survived to summary judgment. In papers, the plaintiff then "conceded" that its adversary "may not also be the RICO enterprise." *Id.* at 135. As for *Moses v. Martin*, 360 F.Supp.2d 533 (S.D.N.Y. 2004), the defendants were a small corporation and its principal. The Court appears merely to have rejected a circular plea to both (a) pierce the corporate veil and (b) hold the pierced corporation vicariously liable

law.[16] No one is a person *before* the beginning of life, and no one is *after* the end.[17] Although personal injury cannot occur upon or after death, the law of Texas does recognize injury to *memory* after death: how Bill is remembered. Under Texas Civil Practice and Remedies Code § 73.001, the injury is called *blackening* of memory.[18] Because blackening of Bill's 'memory' cannot be injury to person, it must be injury to property.[19] There exists a

---

for its principal's acts.

16    The States have played a "long-established role ... in creating property interests". *Aquilino v. U.S.*, 363 U.S. 509, 513 n 3 (1960). Each State has a "legitimate and traditional interest ... in creating and defining the property interest of its citizens". *Id.* at 514. "Property interests ... are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law". *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). "The hallmark of property ... is an individual entitlement grounded in state law". *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982). "While federal law governs most issues under RICO, whether a particular interest amounts to property is quintessentially a question of state law." *Doe v. Roe*, 958 F.2d 763, 768 (7th Cir. 1992). RICO "property entitlements ordinarily derive from state law." *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1351 (2nd Cir. 1994). A "court looks to relevant state property law principles to determine whether an interest asserted by a RICO plaintiff to have been injured is 'property' for RICO purposes." *Clark v. Stipe Law Firm, L.L.P.*, 320 F.Supp.2d 1207, 1214 (W.D.Okla. 2004).

17    Under *Roe v. Wade*, 410 U.S. 113, 163 (1973), the State may "regulate the abortion procedure" beyond the first trimester – but not apparently before the beginning of said trimester. See also *Delgado v. Yandell*, 468 S.W.2d 475, 478 (Tex.Civ.App.), *writ ref'd n.r.e. per curiam*, 471 S.W.2d 569 (Tex. 1971); *Edinburg Hosp. Authority v. Trevino*, 941 S.W.2d 76, 89 (Tex. 1997). Under *Lumberman's Reciprocal Ass'n v. Behnken*, 246 S.W. 72, 74 (Tex. 1922), an employee's accidents "on his way to and from work are not regarded as in the course of his employment". So too for injuries before or after life.

18    Section 73.001 defines *libel* as defamation "that tends to blacken the memory of the dead or that tends to injure a living person's reputation". The statute clearly distinguishes between (a) injuring the reputation of the living and (b) blackening the memory of the dead. The wording appears to track a classic treatise entitled "Pleas of the Crown", wherein author William Hawkins defines *libel* as defamation "tending either to blacken the memory of the dead, or the reputation of one who is alive". *Root v. King*, 7 Cow. 613 (N.Y.Sup. 1827). In *Renfro Drug Co. v. Lawson*, 160 S.W.2d 246 (Tex.Com.App. 1942), and in *Ritzmann v. Weekly World News, Inc.*, 614 F.Supp. 1336 (N.D.Tex. 1985), the Court merely held that the property called 'memory' belongs to the estate, precisely as Patricia alleges. Of the defendant's other cases, none involve blackening the memory of the dead: *Houston Printing Co. v. Dement*, 44 S.W. 558 (Tex.Civ.App. 1898) (injury to reputation of the living); *Shaw v. Rolex Watch U.S.A., Inc.*, 776 F.Supp. 128 (S.D.N.Y. 1991) (emotional distress and personal injury); *Gotlin v. Lederman*, 367 F.Supp.2d 349 (E.D.N.Y. 2005) (personal injury); and *Taylor v. Wilson*, 180 S.W.3d 627 (Tex.App. 2005) (legal malpractice).

19    Because the defendant insists that the blackening is personal injury, it is worthwhile to note that the Supreme Court never has indicated that RICO excludes personal injury. Only the Dissent in *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479 (1985), even entertained the possibility: Justice Marshall in

direct causal relationship between the violation of the RICO statute and the injury to Bill's memory.[20]

## AS ADMINISTRATRIX,
## PATRICIA STATES A CLAIM FOR
## UNJUST ENRICHMENT.

The defendant has been enriched at Bill's expense. Equity and good conscience "militate against permitting the defendant to retain said enrichment." (Complaint at 100.) See, generally, *Pope v. Garrett*, 211 S.W.2d 559, 562 (Tex. 1948).[21]

---

essence commented that the Court was holding that personal injuries are indeed included. *Id.* at 509. The Second Circuit has entertained the possibility only twice. In *Bankers Trust Co. v. Rhoades*, 741 F.2d 511 (2d Cir. 1984), *vacated*, 473 U.S. 922 (1985), the Court actually found RICO injury, so any statement that RICO may not cover personal injury is merely "a passing phrase of dictum embedded in a pre-*Sedima* holding that was ultimately vacated by the Supreme Court." *National Asbestos Workers Medical Fund v. Philip Morris, Inc.*, 74 F.Supp.2d 221, 234 (E.D.N.Y. 1999). In *Laborers Local 17 Health and Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229 (2nd Cir.), *cert. den.*, 528 U.S. 1080 (2000), the reason for denying relief was *not* that the underlying injury was personal. Rather, "because defendants' alleged misconduct did not proximately cause the injuries alleged, plaintiffs lack standing to bring RICO claims against defendants." *Id.* at 239. "It is not clear that personal injury damages are not recoverable under RICO." *Schwab v. Philip Morris USA, Inc.*, 449 F.Supp.2d 992, 1042 (E.D.N.Y. 2006). "The Court of Appeals for the Second Circuit has yet to rule on the matter." *Id.* Entirely in accord is the summary order (available at http://www.ca2.uscourts.gov, docket number 04-6700) cited by the defendant: *Hollander v. Flash Dancers Topless Club*, 173 Fed.Appx. 15 (2nd Cir.), *cert. den.*, 127 S.Ct. 49 (2006) (former mother-in-law involved in prostitution). Confronting a district court opinion, 340 F.Supp.2d 453 (2004), that announced both no proximate causation *and* no injury to property, the Second Circuit agreed only that there was no proximate causation. *Id.* at 18.

20    But for the bribery of Sherwood, who was the city manager of Murphy, Texas, no sting would have occurred there. But for the sting in Murphy, the defendant would not have succeeded in steamrolling the police. But for the steamrolling, the police would not have broken into Bill's home – with cameramen and without a warrant. But for this invasion, upon an individual whose mental health was doubted, Bill would not have shot himself. But for this demise, Bill would be remembered for his many good deeds and kind words in Kaufman County. Bill would not be remembered (a) for suicide and (b) for acts of which only the defendant has charged and convicted him. In a RICO bribery case, such a causation chain survives a 12(b)(6) motion. See, e.g., *City of New York v. JAM Consultants, Inc.*, 889 F.Supp. 103, 105 (S.D.N.Y. 1995).

21    In *LaChance v. Hollenbeck*, 695 S.W.2d 618 (Tex.App. 1985), and in *Best Buy Co., Inc. v. Barrera*, 214 S.W.3d 66 (Tex.App. 2006), the claimant actually prevailed; the defendant quotes dictum. In *Burlington Northern R. Co. v. Southwestern Elec. Power Co.*, 925 S.W.2d 92 (Tex.App. 1996), *aff'd*, 966 S.W.2d 467 (Tex. 1998), and in *First Union Nat. Bank v. Richmont Capital Partners I, L.P.*, 168 S.W.3d 917 (Tex.App. 2005), the claims were barred by the existence of an express contract, which here does not exist.

### IN HER INDIVIDUAL CAPACITY,
### PATRICIA STATES CLAIMS FOR
### INFLICTION OF EMOTIONAL DISTRESS.

In her individual capacity, Patricia states a claim for intentional infliction of emotional distress upon her.[22]  (Complaint at 91-93.)  See *City of Midland v. O'Bryant*, *supra*.  In that capacity, she also states a claim for negligent infliction of emotional distress. (Complaint at 94-98.)  "By means *inter alia* of badgering the Murphy police after midnight, the defendant did push law enforcement agencies to do what they otherwise would not do".[23] (*Id.* at 96.)

### IN HER INDIVIDUAL CAPACITY,
### PATRICIA STATES CLAIMS FOR
### INVASION OF PRIVACY.

In her individual capacity, Patricia states a claim for intentional intrusion upon the right to be left alone.[24]  (Complaint at 83-86.)  In that capacity, she also states a claim for intentional disclosure of private facts.[25]  (Complaint at 87-90.)

---

22    Now that Bill is dead, the defendant has been first to the news wires (*id.* at 43), has published various gruesome details of the death and released various gruesome materials (*id.* at 44) and has otherwise engaged in narrating, explaining, filming and broadcasting that has trapped Patricia in a climate of public ridicule, embarrassment, humiliation and fear (*id.* at 49).  Concededly, as in *Mineer v. Williams*, 82 F.Supp.2d 702 (E.D.Ky. 2000) (applying Kentucky law), and *Doe v. Mobile Video Tapes, Inc.*, 43 S.W.3d 40 (Tex.App. 2001), the courts have held that one may not bring an IIED claim where the defendant's conduct was 'directed' primarily at another.  However, the instant post-mortem allegations are factually distinguishable.

23    See the discussion of the estate's claim for negligence, *supra*.  For its own part, the defendant describes Patricia's individual claim as 'analogous' and declines to engage in additional discussion.

24    In *Cornhill Ins. PLC v. Valsamis, Inc.*, 106 F.3d 80, *reh. den.*, 110 F.3d 795 (5th Cir. 1997), *cert. den.*, 522 U.S. 818, *reh. den.*, 522 U.S. 1008 (1997), the Court merely held that invasion of privacy does not include making offensive comments and inappropriate advances.  In *Clayton v. Richards*, 47 S.W.3d 149 (Tex.App. 2001), the claim actually survived a motion by the defendant for summary judgment.  In *Vaughn v. Drennon*, 202 S.W.3d 308 (Tex.App. 2006), the claim had actually survived to judgment, and the Court was merely deleting injunctive prohibitions.

25    In *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975), the Court merely held that "the States may

24

CONCLUSION

For the foregoing reasons, the defendant's motion should be denied.

Dated: Brooklyn, New York
       October 23, 2007

                                 Yours, etc.

                                 BARON ASSOCIATES P.C.


                                 /s/   Bruce Baron
                                 By: Bruce Baron, Esq. (BB7297)
                                 Attorneys for Plaintiff
                                 2509 Avenue U
                                 Brooklyn, New York 11229
                                 (718)934-6501

---

not impose sanctions on the publication of truthful information contained in official court records open to public inspection." Id at 495. The instant case does not involve such records. In *Moore v. Charles B. Pierce Film Enterprises, Inc.,* 589 S.W.2d 489 (Tex.Civ.App. 1979), the suit was based merely upon a motion picture in which a thirty-year old murder resembled one in the family, and the suit actually survived to summary judgment. In *Justice v. Belo Broadcasting Corp.,* 472 F.Supp. 145 (N.D.Tex. 1979), the only alleged wrongdoing was to publish what "[i]nvestigators are quoted as saying". Id at 146. In *Baugh v. CBS, Inc.,* 828 F.Supp. 745 (N.D.Cal. 1993), the claim actually survived a motion by the defendant for summary judgment. In *Star-Telegram, Inc. v. Doe,* 915 S. W.2d 471 (Tex. 1995), the suit actually survived to summary judgment. Then the Court found that the defendant had indeed taken all due "precautions to avoid unwarranted public disclosure and embarrassment". Id. at 474. The instant case is diametrically opposite: "once BILL was dead, the defendant was first to the news wires. For the defendant, to hawk news of his death was to brag about the fruit of its own poisonous tree. The murderer was first to the news wires but must be last in court. Having caused BILL's death, the defendant is uniquely not able to call the event a matter of legitimate public interest or of public concern. Whatever might be the right of a competitor new and neutral, for the defendant there exists no right to peddle the artifacts of this tragedy. Even where the defendant's last acts of obtaining information might otherwise be lawful, they are polluted by initial acts that were not. When performed by the defendant, any and all dissemination is disrobed of immunity. What an innocent competitor might seek to disclose-the culpable defendant must keep secret" (Complaint at 43.) *Lowe v. Hearst Communications, Inc.,* 487 F.3d 246 (5th Cir. 2007), too, is distinguishable in that there the defendant had not invaded, but was merely 'new and neutral'.

25